J. X. Steward et al. v. Coleman County.

No. 1102.　Decided May 1, 1902.

**1.—Jurisdiction of Supreme Court—Boundary Case.**

A case may involve a question of boundary without being a "case of boundary" over which the Supreme Court is denied jurisdiction; the right of the whole case must depend upon the boundary question, to constitute it a "case of boundary" within the meaning of the statute. In a suit to recover on a purchase money note and foreclose the vendor's lien, the Supreme Court has jurisdiction, though the defense is failure of consideration and that issue depends on whether the land sold was within the boundaries of plaintiff's grant. (Pp. 446, 447.)

**2.—County School Land—Survey—Boundaries—Statute.**

Under article 4269, Revised Statutes (and possibly independent of the statute), the boundaries of a grant of county school land are fixed by the calls for adjoining older surveys as shown by its field notes returned into the General Land Office, though by mistake of the surveyor in running lines not shown or called for by the field notes so returned, to determine the width of the vacancy between such older surveys, the vacant strip was thought to be narrower than it was in fact, and the survey returned included, between the lines and corners of the older surveys called for in its field notes, more than the league of land intended to be granted. (Pp. 447-449.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Coleman County.

Coleman County sued Steward and Hubert, with others, and appealed from a judgment in Steward's favor. The judgment being reversed and rendered for appellant, Steward obtained writ of error.

*Jenkins & McCartney,* for plaintiff in error.—The Court of Civil Appeals erred in reversing and rendering this cause in favor of the appellant, for the reason that it had no jurisdiction, upon conflicting evidence, to reverse and render final judgment in said cause, it being without jurisdiction to conclusively determine the facts upon such evidence. Choate v. Railway, 91 Texas, 409.

*F. L. Snodgrass, D. O. Campbell,* County Attorney, and *Woodward & Baker,* for defendant in error.—The Supreme Court of the State of Texas has no jurisdiction to review or pass upon the judgment of the Court of Civil Appeals in this cause, for the reason that this case is one of boundary, pure and simple, and the judgment of the Court of Civil Appeals in all cases of boundary is final. Schley v. Blum, 85 Texas, 552; Meade v. Warring, 90 Texas, 121; Cox v. Finks, 91 Texas, 319.

WILLIAMS, Associate Justice.—This action was begun by the county against W. H. Hubert, J. X. Steward and others to recover against Hubert upon a note given to the county by him for a parcel of land claimed to be a part of one of its leagues of school land; and against all of the defendants for a foreclosure of its vendor's lien upon

such land. The defendants named are the only ones who made defenses.

The defense upon which the case was decided in the District Court and Court of Civil Appeals and depends here was that of failure of consideration, based upon the allegation that the land for which the note was given was not, as it was supposed to be by both parties at the time of the sale, included within the plaintiff's league, but was vacant and had been subsequently located by and patented to a third person who had conveyed it to Steward. Upon the trial in the District Court, the jury found in favor of this defense and judgment was rendered against plaintiff. Upon appeal, the Court of Civil Appeals reversed this judgment and rendered judgment for plaintiff. This writ of error was granted upon the assignment that the Court of Civil Appeals erred in rendering final judgment instead of remanding the cause. The issue of fact in both courts below was as to the true location of the southern boundary of survey No. 91, Coleman County school lands, the line contended for by plaintiff including, and that contended for by defendants excluding, the tract sold to Hubert.

A motion has been made by the county to dismiss this writ of error upon the ground that this court is without jurisdiction because the case is one of boundary.

The cases over which this court is denied jurisdiction by the provision of the statute on which the motion is based are "all cases of boundary." A case may involve a question of boundary without being a "case" of boundary as that phrase has been construed by the decisions of this court. Cox v. Finks, 91 Texas, 320; Schley v. Blum, 85 Texas, 551; Wright v. Bell, 94 Texas, 577. In the case first cited, it is said: "It was in effect held in Schley v. Blum that the right of the case must depend upon a question of boundary, and we think we may here add to that holding by saying that the right of the whole case must so depend. * * * It seems to us that the decision of the question, whether a suit is or is not one of boundary merely, depends upon the answer to the further question: If there had been no question of boundary, would there have been a case? If so, it is not a boundary case. If not, it is a case of boundary pure and simple." The further discussion in that opinion clearly develops the proposition that a case of boundary may involve other questions besides the one as to the location of the contested line, and that the presence of such question does not give this court jurisdiction; and that cases which are not wholly cases of boundary may involve, as necessary to their decision the location of boundaries, and this does not thwart the jurisdiction of this court to determine every question of law arising in them. This distinction arises from the fact that the jurisdiction is withheld in *cases* of boundary and is not denied over questions of boundary arising in cases of a different kind.

The present case is one for the recovery of a debt and the foreclosure of a lien upon land,—one to which the jurisdiction of this court, under

other provisions of the statute, unquestionably extends. The fact that, in order to determine its merits, a boundary must be located does not change its character and make it wholly a case of boundary. The motion to dismiss is overruled.

As before stated, the writ of error was granted because it was thought there was error in the holding of the Court of Civil Appeals, that, upon the uncontradicted facts, the land in question was included in the plaintiff's survey, and in the rendition of judgment for plaintiff. We have concluded that the judgment was justified by the provisions of the statute (Article 4269, Revised Statutes), which escaped our attention when we granted the writ; and we may add that, when the facts are fully understood, it is by no means clear that, without such a statute, the judgment would be wrong.

The provision is as follows: "Art. 4269. The surveys of all county school lands heretofore made, either actually on the ground or by protraction, and returned into the General Land Office, according to law, and upon which patents have issued, are hereby declared valid surveys, and the titles to the lands included within the lines of said surveys, as returned to the General Land Office, are hereby vested in the counties for which the same were made; and in all such surveys, the calls for distance shall have precedence and control calls for rivers or natural objects when the calls for distance will give the quantity of land intended to be included in the survey and the calls for natural objects or rivers will not; provided, this law shall not divest any vested right."

To show its application, a general statement of a rather complicated state of facts is necessary. Coleman County school survey No. 91, intended by the surveyor to embrace a league, was made upon a body of vacant land lying between two tiers of older surveys, those on the south bordering on the Colorado River and being separated from those on the north by the intervening vacancy. There was no actual survey of the lines of survey No. 91 beyond the finding of one of the corners of the northern tier of surveys. Beginning at this corner, the surveyor merely platted in between the older surveys the land which he intended to appropriate, calling for their lines and corners and giving the courses and distances which he believed would reach them. The field notes and a sketch, showing this action and representing the land taken up by him as occupying the whole of the space between the northern and southern surveys, he returned to the Land Office and a patent was issued, giving the field notes so returned.

The evidence shows that the distances from the northern surveys to those on the south, as given in these field notes, do not reach the northern boundaries of the latter, and that, if these calls for distance are to control in locating the southern boundary of survey No. 91, it does not include most of the land in controversy; while if the calls for the lines of the river surveys are to govern, all of the space between the older surveys is taken up. The evidence further shows that the surveyor, before platting survey No. 91, in order to ascertain the distances between the

northern and southern surveys, ran a line between two of them west of the point where he afterwards fixed the western boundary of the league in question. In so doing, he started at a point which he supposed to be the northeast corner of one of the river surveys, but which was in fact 401 varas north of the true corner. In extending his line north from this point, he located, as he supposed, the northwest corner of that one of the southern surveys, which at this place bordered on the vacant tract, and there erected a mound for a corner of the two. It thus resulted that this corner was fixed 401 varas too far north, and the vacant tract was thus assumed to be too narrow. The line thus run on the ground was not made one of the lines of survey No. 91, nor are any of the corners which the surveyor thus mistakenly established called for or referred to in the field notes of that survey, and his error is in no way indicated in his return to the Land Office. The only influence which the running of this preliminary line had upon the subsequent work of platting survey No. 91 was to cause the surveyor to mistake the width of the vacancy and to include in the league survey an excess of about 1500 acres, if his calls for the lines of the river surveys are regarded.

We are relieved by the statute of the necessity of determining what, upon general principles, should be the proper construction of this office work. The language used in the statute vesting in the counties "the tiles to the lands included within the lines of said surveys, as returned to the General Land Office," applies exactly to the question before us. By the description returned to the Land Office, the lines of this survey are the same as the lines of the older grants. There is nothing in this description to raise any question as to the mistake of the surveyor or to suggest any other lines than those expressly given. The land included in these lines appears on the face of the field notes to be all that lies between the two tiers of surveys called for and the express language of the statute governs.

The fact that the rule laid down is made to apply to surveys made actually on the ground, as well as to those made by protraction, shows that the Legislature intended to prescribe one broad general rule to the construction of grants of school lands to counties, and that rule is, that the land included in the patents shall be held to be that included in the lines returned to the Land Office, without regard to mistakes in surveying, such as that which occurred here. The case is a good example of the application of the statute. Lines are given which embrace all of the land between two sets of surveys, but the surveyor, by a mistake not shown by his return, has erroneously stated the distance; and the lines given in the Land Office are made to conclusively control, whether the distance and quantity are as the surveyor intended or not. No other application of the statute will give complete effect to its language. The final provision strengthens this construction, for it expressly makes the distances called for govern as against natural objects, where necessary

to include the quantity, which is a precautionary provision against the effect the first part of the article would otherwise have.

It will not do to say that the language, "lands included within the lines as returned to the General Land Office," means merely such lands as are found on a trial of the question of boundary, to be so included; for that construction would make this provision wholly useless. The evident meaning is the lines as stated on the face of the description filed in the Land Office.

No right which vested prior to the passage of the statute is shown by defendants and the subject was entirely within the control of the Legislature. The judgment is correct.

*Affirmed.*