## J. M. Lewright et al. v. Travis County.

### Decided March 24, 1909.

**1.—School Land—Boundaries.**

Under article 4269, Revised Statutes, the lines of a survey of school land are fixed by the calls as returned to the General Land Office, and to these will be given that construction most favorable to the county. A call for the established lines of an older survey will prevail over one for course and distance falling short of such lines, though the result is to make an excess in the survey, in spite of evidence showing that the surveyor was mistaken in the location of such lines and intended to give the survey its proper area. Stewart v. Coleman County, 95 Texas, 446, followed.

**2.—Field Notes—Reversing Course.**

It is proper to run the courses of a survey reversely from the beginning point, where such method will make the survey close and satisfy the controlling calls, while the contrary method would not.

Appeal from the District Court of Travis County. Tried below by Hon. Chas. A. Wilcox.

*James & Yeiser,* for appellants.—Where there are conflicting calls in a grant, when the object is to determine the location of the grant, the question to be determined is not what the locating surveyor intended to do at the time of making the location, but what he actually did when he made the survey on the ground. Blackwell v. Coleman County, 94 Texas, 216; Booth v. Upshur, 26 Texas, 64; Robinson v. Doss, 53 Texas, 508.

The field notes of Travis County's survey as returned to the Land Office will be followed by their calls for course and distance, when such calls will give the proper area of land intended to be granted and all the evidence shows that these calls should prevail. Where a corner calls for bearing trees and they are gone, in the absence of proof, it will be presumed to be where course and distance locate it. Keystone Mills Co. v. Peach River Lumber Co., 16 Texas Ct. Rep., 958; Williams v. Beckham, 6 Texas Civ. App., 744; Browning v. Atkinson, 37 Texas, 633; Scanlon v. Hitchler, 19 Texas Civ. App., 692; Dodge v. Richardson, 70 Texas, 209.

In establishing a survey as made by the locating surveyor, course

and distance will prevail over natural and artificial objects and a marked line, when, upon applying the calls to the land, the surrounding and connecting circumstances adduced in proof to explain the discrepancy show clearly that course and distance is the most certain and reliable evidence of the true location of the land. Missouri, K. & T. Ry. v. McGlamory, 89 Texas, 635; Blackwell v. Coleman County, 94 Texas, 216; Booth v. Upshur, 26 Texas, 64; Booth v. Strippleman, 26 Texas, 436; Gerald v. Freeman, 68 Texas, 201; Phillips v. Ayres, 45 Texas, 601; Goodson v. Fitzgerald, 40 Texas Civ. App., 619; Sloan v. King, 33 Texas Civ. App., 537; Layton v. N. Y. & Texas Land Co., 29 S. W., 1120; Lily v. Blum, 70 Texas, 711; Johnson v. Archibald, 70 Texas, 96.

When the uncontradicted testimony in a case shows that a surveyor, in making a survey, actually ran some of the lines on the ground and marked their corners, and then closed his survey by projecting the other line's course and distance in order to give it the proper configuration and area, his survey must be established by the jury by following the footsteps of the surveyor as far as they can be traced, and then completing the survey as the surveyor would have done if he had gone on to complete it on the ground. Blackwell v. Coleman County, 94 Texas, 216; Robinson v. Doss, 53 Texas, 508.

Where one of the lines of a survey containing an inconsistent call is shown never to have been actually run on the ground by the locating surveyor, the calls for the survey can not be reversed for the purpose of locating such ambiguous line. Ayers v. Lancaster, 64 Texas, 312.

*John W. Brady, D. W. Doom & D. H. Doom,* for appellees.— Upon the whole evidence the verdict of the jury and judgment rendered thereon are right and no other verdict and judgment could have been rendered. Coleman County v. Stewart, 65 S. W., 383; Maddox v. Fenner, 79 Texas, 279; Baker v. Light, 80 Texas, 627; Brown v. Bedinger, 72 Texas, 247; Moore v. Reiley, 68 Texas, 668; Wyatt v. Foster, 15 S. W., 681, 79 Texas, 413; Upshur County v. Lewright, 99 S. W., 441, 101 S. W., 1013.

The fact that the location of the south boundary line of the Travis County school land according to the call for the north line of the Colony surveys created an excess in the length of its east and west lines and an excess in the area of the survey is not material. Maddox v. Fenner, 79 Texas, 279.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title, brought by the appellants against Travis County to recover certain lands described in plaintiffs' petition.

The defendant answered, claiming title to a part of the land described in the plaintiffs' petition, and disclaimed as to other lands not contained within the boundaries of the Travis County school survey. The answer in this respect is as follows: "That the defendant disclaims all interest in or claim to any part of the land sued for by the plaintiffs, except that part included in all that certain tract of land lying and being situated in the county of Throckmorton

(formerly in the county of Cooke) in the State of Texas, viz.: Four leagues of land, situated and described as follows: In Cooke County on the Salt Fork of the Brazos about 28 miles north 60 west of Fort Belknap, by virtue of an Act of Congress of the late Republic of Texas, entitled an Act appropriating certain lands for the establishment of a general system of education approved January 26, 1839. Beginning 1944 varas north of the southwest corner of a one-third league survey No. 9, a stake from which a mesquite marked X bears south 44½° W. 28 varas, another forked marked X bears S. 12 W. 44 vrs. Thence west 10,000 varas to a pile of stones, from which a mesquite marked X bears N. 64 W. 35 vrs. another marked X bears S. 73° W. 100 varas, a round mound bears S. 18½ E. 2200 varas; thence south 10,000 varas to a stake in prairie, from which a mesquite marked X bears S. 40° E. 40 varas and another, forked, marked X bears S. 16½ W. 40 varas. Thence east 10,000 varas to a stake on the north boundary line of Colony survey. Thence north at 1283 varas pass the southwest corner of survey No. 7 of 1280 acres, 10,000 varas to the place of beginning.

"That as to all of the said land sued for included in the said four leagues of land hereinbefore described, the said defendant denies all and singular the allegations contained in the said amended original petition, and says that it is not guilty of the said supposed wrongs, injuries and trespasses, or any of them, laid to its charge in the said amended original petition, as therein stated, and of this it puts itself upon the country and prays judgment."

This survey is known as the Travis County School Land, title to which is alleged and claimed by the defendant. This land was surveyed, according to the field notes as stated in defendant's answer, for Travis County in 1854, and a patent therefor, as described in the field notes, was issued on the 16th day of October, 1856. The lands claimed by the plaintiffs were surveyed in 1888, and patent issued in that year. The plaintiffs' surveys called to commence at the southwest corner or the south line of the Travis County school land.

It is conceded by both parties, and the case was so treated in the trial court, that the question in controversy and the one to be determined, is the whereabout of the true location of the south line of the Travis County school land. Plaintiffs contend that this south line should be located running east from the southwest corner of the Travis County school lands where this corner would be established by course and distance called for in the field notes from the northwest corner of the survey. There can be no question but that this northwest corner is well established, and its whereabouts can be ascertained from the round mound called for in the field notes. The defendant contends that the south line of the Travis County school land should be established to coincide with the calls in the field notes for the north boundary line of the Colony surveys. It is a fact well established and about which there is no controversy, that the Colony lines called for are well established and can be found upon the ground. The verdict of the jury was general in favor of the defendant, and upon that verdict the court rendered judgment establishing the south

line of the Travis County school land in accordance with the contention of the appellee. If the judgment of the court can be maintained in so establishing the south line the appellee is entitled to recover all of the land sued for by the plaintiffs, except that to which the disclaimer applies.

The assignments of error raise a number of interesting questions which the view that we take of the case renders it unnecessary that we should decide.

We think the disposition of this case is controlled by article 4269 of the Revised Statutes, as construed and applied in Steward v. Coleman County, 95 Texas, 446, which law was in force at the time the appellants' location and surveys were made. The case cited was before this court and will be found reported in 65 S. W., 384. It involved the location of the lines of a part of the Coleman County school lands. Our opinion, which is referred to as possibly stating the field notes more fully than the opinion of the Supreme Court, shows that the beginning corner of that survey was the northwest corner of the Samuel T. Belt, and called for course and distance for a certain point, and also for the north line of the Montez survey and of other surveys. The distance called for did not reach the lines of the other surveys called for and fell short about 400 varas. A strip of that width was subsequently located and claimed by the appellants Steward and others, he contending that the calls for course and distance should control over the lines of the other surveys called for. The only corner actually established on the ground was the beginning corner, and from that point the calls and surveys were made by projection. Steward recovered in the court below, but we reversed and rendered judgment in favor of Coleman County, holding to the effect that the calls for the other surveys would control the calls for course and distance, and that the south line of the Coleman surveys should be established on the north line of the surveys called for, thereby holding that there was no vacancy between the Coleman County surveys and that tier of surveys. Our judgment of rendition in favor of the county was based upon the superiority of the calls of the river surveys, and we determined the question as we would any ordinary case of boundary where county school lands were not involved. The Supreme Court granted a writ of error and affirmed the judgment of this court, but upon a different ground indicated in its opinion, wherein they applied the article of the statute referred to. So much of the opinion that relates to this question is as follows:

"As before stated, the writ of error was granted, because it was thought there was error in the holding of the Court of Civil Appeals, that, upon the uncontradicted facts, the land in question was included in the plaintiff's survey, and in the rendition of judgment for plaintiff. We have concluded that the judgment was justified by the provisions of the statute (article 4269, Revised Statutes) which escaped our attention when we granted the writ; and we may add that, when the facts are fully understood, it is by no means clear that, without such a statute, the judgment would be wrong.

"The provision is as follows: 'Art. 4269. The surveys of all county school lands heretofore made, either actually on the ground

or by protraction, and returned into the General Land Office according to law, and upon which patents have issued, are hereby declared valid surveys, and the titles to the lands included within the lines of said surveys, as returned to the General Land Office, are hereby vested in the counties for which the same were made; and in all such surveys the calls for distance shall have precedence and control calls for rivers or natural objects when the call for distance will give the quantity of land intended to be included in the survey and the calls for natural objects or rivers will not; provided, this law shall not divest any vested right.'

"To show its application a general statement of a rather complicated state of facts is necessary. Coleman County School survey No. 91, intended by the surveyor to embrace a league, was made upon a body of vacant land lying between two tiers of older surveys, those on the south bordering on the Colorado River and being separated from those on the north by the intervening vacancy. There was no actual survey of the lines of survey No. 91 beyond the finding of one of the corners of the northern tier of surveys. Beginning at this corner, the surveyor merely platted in between the older surveys the land which he intended to appropriate, calling for their lines and corners and giving the courses and distances which he believed would reach them. The field notes and a sketch, showing this action and representing the land taken up by him as occupying the whole of the space between the northern and southern surveys, he returned to the Land Office and a patent was issued giving the field notes so returned.

"The evidence shows that the distances from the northern surveys to those on the south, as given in these field notes, do not reach the northern boundaries of the latter, and that if these calls for distance are to control in locating the southern boundary of survey No. 91 it does not include most of the land in controversy; while if the calls for the lines of the river surveys are to govern, all of the space between the older surveys is taken up. The evidence further shows that the surveyor before platting survey No. 91, in order to ascertain the distances between the northern and southern surveys, ran a line between two of them west of the point where he afterwards fixed the western boundary of the league in question. In so doing he started at a point which he supposed to be the northeast corner of one of the river surveys, but which was in fact 401 varas north of the true corner. In extending his line north from this point, he located, as he supposed, the northwest corner of that one of the southern surveys which at this place bordered on the vacant tract, and there erected a mound for the corner of the two. It thus resulted that this corner was fixed 401 varas too far north, and the vacant tract was thus assumed to be too narrow. The line thus run on the ground was not made one of the lines of survey No. 91, nor are any of the corners which the surveyor thus mistakenly established called for or referred to in the field notes of that survey, and his error is in no way indicated in his return to the Land Office. The only influence which the running of this preliminary line had upon the subsequent work of platting survey No. 91 was to cause the surveyor to mistake the width

of the vacancy and to include in the league survey an excess of about 1500 acres, if his calls for the lines of the river surveys are regarded.

"We are relieved by the statute of the necessity of determining what, upon general principles should be the proper construction of this office work. The language used in the statute vesting in the counties "the titles to the lands included within the lines of said surveys, as returned to the General Land Office," applies exactly to the question before us. By the description returned to the Land Office, the lines of this survey are the same as the lines of the older grants. There is nothing in this description to raise any question as to the mistake of the surveyor or to suggest any other lines than those expressly given. The land included in these lines appears on the face of the field notes to be all that lies between the two tiers of surveys called for and the express language of the statute governs.

"The fact that the rule laid down is made to apply to surveys made actually on the ground, as well as to those made by protraction, shows that the Legislature intended to prescribe one broad general rule to the construction of grants of school lands to counties, and that rule is, that the land included in the patents shall be held to be that included in the lines returned to the Land Office, without regard to mistakes in surveying, such as that which occurred here. The case is a good example of the application of the statute. Lines are given which embraces all of the land between two sets of surveys, but the surveyor, by a mistake not shown by his return, has erroneously stated the distance; and the lines given in the land office are made to conclusively control, whether the distance and quantity are as the surveyor intended or not. No other application of the statute will give complete effect to its language. The final provision strengthens this construction, for it expressly makes the distances called for govern as against natural objects, where necessary to include the quantity, which is a precautionary provision against the effect the first part of the article would otherwise have.

"It will not do to say that the language, 'lands included within the lines as returned to the General Land Office,' means merely such lands as are found on a trial of the question of boundary, to be so included; for that construction would make this provision wholly useless. The evident meaning is the lines as stated on the face of the description filed in the land office.

"No right which vested prior to the passage of the statute is shown by defendants and the subject was entirely within the control of the Legislature. The judgment is correct."

This construction of the statute means that the boundaries of the survey will be determined by the field notes returned to the Land Office, and that the calls of the survey will not be affected by a mistake of the surveyor, and the ordinary rules of ascertaining and determining the effect of calls and establishing boundaries will not affect the right of the county to all of the lands embraced in any of the calls in the field notes which can be ascertained with any degree of certainty, although the survey so constructed will contain an excess. The object of the statute was to appropriate to the benefit

of the county all of the lands included within those calls in the field notes so returned to the Land Office which were most favorable to the county, provided they could be ascertained and identified, although such calls might be inconsistent with some other calls, such, for instance, as was the case in the Coleman County lands, where the call for distance was made to yield to the calls for lines of other surveys. In other words, in its final analysis this decision means that in ascertaining the boundaries of county school lands, such construction will be given to the field notes so returned to the Land Office as to give to the county the benefit of those calls that are most favorable to its interests, when they can be ascertained with a reasonable degree of certainty, although by so doing some other call may be displaced which might, under the ordinary rules of determining the superiority of calls, be given effect and made to control in cases where the lines of county school lands were not involved.

There is enough similarity between the facts of this case and those stated in the opinion cited as to make the principle upon which that case is based applicable here. There the county relied upon the calls for the lines of other surveys over a call for course and distance from an established corner, although the effect would be to give the county a large excess, and in that case the field notes so returned contained the calls for the lines of other surveys and also the calls for course and distance from a known corner. This latter call did not reach the line of the surveys called for. This statement shows the similarity between the calls in the field notes set out in that case, and those set out in the Travis County survey. By force of the statute referred to the court in the Coleman County case held the boundaries of the survey would extend to the lines of the surveys called for. In this case it appears that the northwest corner of the Travis County school land is established a certain distance from the round mound called for in the field notes returned to the Land Office. The court below, as well as the parties to this appeal, treat that corner as ascertained by the surveyor Howerin to be well established and located where he fixed it running course and distance from the round mound as called for. From that point the west line of the survey is constructed by course and distance south 10,000 varas for the southwest corner. Bearing trees are called for at this point, but none are found. From thence the call is for 10,000 varas east for the Colony line. This latter line is well established, and there is no controversy as to its location. From the southeast corner the call is north to the northeast corner 10,000 varas to the place of beginning. The northeast corner is not found on the ground.

The plaintiffs contend that the survey should be constructed by running from the northwest corner south the course and distance called for, and then run east the course and distance called, so as to establish the south line of the survey, and claim that the call for the Colony line by the surveyor was a mistake; that in constructing the survey in this way Travis County will get the quantity of land she is entitled to; that to extend the survey to the Colony line will include a large excess. The judgment rendered by the trial court in

establishing the south line of the Travis County school land ignored the call for distance, as claimed by the plaintiffs, and extended the survey to the line of the Colony surveys, where the judgment establishes the south line to be. While the Colony line does not extend west the full distance of the Travis County land, it does extend west some considerable distance from where the east line of the Travis County school land would intersect it, if extended to it, as called for; and where this point of intersection should be can be readily determined by commencing at the fixed and ascertained northwest corner of the survey and running east 10,000 varas for the northeast corner, thence south the course called for in order to reach the Colony line, and the point on the line so reached would be the southeast corner of the survey. Thence west along the Colony line for its distance and therefrom extending the line the distance called for, thence north to the northwest corner of the survey.

This, it is true, would construct the survey by running a reverse course from that stated in the field notes, but a resort to this method would close the survey, and would be in recognition of the importance and controlling influence of the only two calls which can not well be questioned, and the identity of which is clearly established. These calls for the northwest corner and the Colony line on the south, if adhered to, fix definite points of the survey which includes all of the land lying between them, and they fix the measure of the land the county is entitled to, although the result would be to displace a conflicting call for distance. Such is the effect of the decision of the Supreme Court in the Coleman County case.

We do not think that this case can be distinguished from the one cited on the ground merely that there is evidence in the record to the effect that the surveyor actually ran the west line and established the southwest corner the course and distance called for from the northwest corner. The discussion of the statute in the opinion in the case cited, and as we construed it, in effect disposes of this question, for there it is held that the county is to get the benefit of calls in the field notes that can be definitely ascertained, although to do so would be to ignore and disregard some other calls. Notwithstanding what has been said in Ayres v. Lancaster, 64 Texas, 312, and the suggestion in appellants' brief, we see no good reason why this survey could not be constructed by reversing the course from the northwest corner.

If we are correct in the views expressed, no other judgment was possible than the one rendered by the trial court. Therefore it is unnecessary to consider the errors assigned.

Judgment affirmed.

*Affirmed.*