### CROSS et al. v. WILKINSON et al. *
(No. 5570.)

(Court of Civil Appeals of Texas. Austin. Feb. 16, 1916. On Motion for Rehearing, April, 1916. Rehearing Denied June 7, 1916.)

1. BOUNDARIES ☞40(1) — OFFICIAL SURVEYS —LAND INCLUDED.

In trespass to try title, evidence of the location of boundary lines of county school lands *held* to raise a question for the jury.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–203; Dec. Dig. ☞40(1).]

2. PUBLIC LANDS ☞175(5)—OFFICIAL SURVEYS—STATUTORY PROVISIONS—"SURVEY."

Rev. St. 1895, art. 4269 (Acts 18th Leg. c. 40) validating surveys theretofore made of county school lands, declaring vested in the several counties "the titles to the lands included in the lines of said surveys and returned to the general land office," does not mean that in ascertaining the boundaries of county school lands such construction will be given to the field notes so returned to the land office as to give to the county the benefit of those calls most favorable to the county, and the word "survey," in the expression "the land included in the lines of the survey," does not mean the diagram or map required by Rev. St. 1911, art. 5336, to be returned with and as a part of the field notes, but is there used as synonymous with "field notes," although the survey, accurately speaking, is the land included in such field notes.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 565, 566; Dec. Dig. ☞175(5).]

For other definitions, see Words and Phrases, First and Second Series, Survey.]

3. PUBLIC LANDS ☞175(6)—OFFICIAL SURVEYS—STATUTORY PROVISIONS.

Such act by its express terms is applicable only to surveys which had been patented at the time it was passed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 568, 569; Dec. Dig. ☞175(6).]

#### On Motion for Rehearing.

4. PUBLIC LANDS ☞178(1) — CONVEYANCE BY COUNTY—WARRANTY—LIABILITY.

Where a county sells land to which it has good title by patent from the state, and conveys by the same description as in the patent, it is not liable to the purchaser on account of differences or difficulties in ascertaining the boundaries of the tract conveyed, since when the boundaries are ascertained the purchaser's title is good.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 579; Dec. Dig. ☞178(1).]

Error from District Court, Travis County; Geo. Calhoun, Judge.

Action by Ed Wilkinson and others against Jesse F. Cross and others. From a judgment for plaintiffs against the named defendant and certain others, they bring error. Reversed as to them, and affirmed as to defendant La Salle County, as to which plaintiffs were denied relief.

A. H. Kirby, of Ft. Worth, E. H. Yeiser, of Austin, and Theodore Mack, of Ft. Worth, for plaintiffs in error. Morrow & Morrow, of Hillsboro, for defendants in error.

JENKINS, J. We copy and adopt the following from plaintiffs in error's preliminary statement as to nature and result of this suit, omitting references to pages of the transcript:

"Defendants in error Ed. Wilkinson, Ed. Woodall, W. C. Robertson, and Pat E. Hooks, as plaintiffs, instituted suit in the form of trespass to try title against Jesse F. Cross, Cora B. Cross, H. Allison, H. O. Conway, Ben O. Smith, W. H. Grove, J. C. C. Martin, H. L. Stewart, J. C. Hartzog, H. T. Shumake, G. W. Walcott, O. B. Holt, T. B. Duncan, and La Salle county, as defendants, for the title and possession of a tract of land described as a part of La Salle county school land leagues Nos. 322, 323, 324, and 325, in Martin county, Tex.

"H. T. Shumate answered by general denial and not guilty, and by cross-action for a tract of land lying west and south of the La Salle county leagues. La Salle county filed plea of privilege, plea in bar, and its answer consisting of exceptions, general denial, and not guilty, and specially that the lands were conveyed by it in bulk and for a lump consideration, and gave only a special warranty.

"Jesse F. Cross and Cora B. Cross answered by general denial and not guilty. Ben O. Smith, W. H. Grove, and T. B. Duncan disclaimed as to all of the land except surveys Nos. 1, 2, and 3, block 10, known as the Jesse F. Cross surveys, describing same by field notes, and also by general denial and plea of not guilty. Defendants J. C. C. Martin, H. L. Stewart, A. F. Blue, and J. B. Smith filed plea of privilege and special demurrer. The plea of privilege was overruled, and the demurrer sustained. These defendants answered by adopting the pleadings of the plaintiff in so far as they sought to establish the boundary lines of the four leagues of the La Salle county school land, and in all other respects denied the allegations of plaintiffs' petition.

"The case was tried before a jury, and on a peremptory instruction given by the court the jury returned a verdict for plaintiffs, and judgment was entered in accordance with such instruction.

"Defendants W. H. Grove, Ben O. Smith, T. B. Duncan, and Jesse F. Cross filed their motion for new trial, which was overruled by the court. W. H. Grove, Ben O. Smith, Jesse F. Cross, Cora B. Cross, and T. B. Duncan filed their petition for writ of error and writ of error bond, and brought the case before this court for review.

"This is really a boundary suit involving the location of the lines and corners of the four leagues of La Salle county school lands, the plaintiffs in the lower court claiming that said boundaries included the lands claimed by plaintiffs in error, which lands were surveyed by the state and platted as existing between the La Salle county school land leagues and the Texas

---

& Pacific surveys, and sold to plaintiff in error Jesse F. Cross as public school land.

"Plaintiffs in error insist that a vacancy existed between the system of school land leagues of which the La Salle county leagues formed a part and the Texas & Pacific system of surveys made at a different time by a different surveyor, and that, the lands claimed by them having been surveyed on such vacancy, the surveys were valid, and were not included in the boundaries of the La Salle county school land leagues. There is no question raised in the record as to the title of plaintiffs to the four leagues of La Salle county school land, and none as to the title of plaintiffs in error to the Jesse F. Cross surveys, if said surveys, in fact, exist."

[1] The evidence as to the location of the boundary lines of the La Salle county school land did not justify a peremptory instruction in favor of the plaintiffs in the court below, defendants in error herein. On the contrary, in our opinion, the evidence greatly preponderated in favor of plaintiffs in error as to the location of the lines and corners of the La Salle county school lands, as originally surveyed. To say the least of it, the evidence was sufficient to raise the issue of boundary for the jury to decide. As this case is to be reversed, we do not deem it proper to further comment on the evidence as to boundary.

[2] The other grounds relied upon, and which evidently formed the basis of the court's action in this matter, was that such charge was required by article 4269, R. S. 1895 (Acts Leg. 1883, p. 28) which reads as follows:

"Art. 4269.—The surveys of all county school lands heretofore made, either actually on the ground or by protraction, and returned to the general land office, according to law, and upon which patents have issued, are hereby declared valid surveys, and the titles to the lands included within the lines of said surveys, as returned to the general land office, are hereby vested in the counties for which the same were made; and in all such surveys the calls for distance shall have precedence and control calls for rivers or natural objects when the calls for distance will give the quantity of land intended to be included in the survey and the calls for natural objects or rivers will not; provided, this law shall not divest any vested right."

It is contended that this act of the Legislature is applicable in the instant case by reason of the fact that the field notes of the La Salle county school land leagues 322 and 325 call for the lines of sections 1 and 6, Texas & Pacific Railroad surveys, which were located prior to said county school land surveys, and also by reason of the fact that the sketch of said county school lands returned to the land office with said field notes showed that the western lines of leagues 322 and 325 coincided with the eastern lines of the railway company surveys. The field notes referred to are as follows:

322: "Beginning at a point the S. E. corner of 320; thence S. 13° E. 5,000 vrs. to corner on west line of section 2, township 2 north, and block 37 of the Texas & Pacific Railway surveys 500 vrs. S. 13° E. from N. W. corner of said section; thence S. 77° W. 5,000 vrs. to mound for corner; thence N. 13° W. 5,000 vrs.

to S. W. corner of No. 20; thence N. 77° E. 5,000 vrs. to place of beginning."

325: "Beginning at a point the S. E. corner of 322; thence S. 13° E. 5,000 vrs. to a point on the west line of section 6, township 2 N., Blk. 38, T. & P. sur. 200 vrs. N. 13° W. from the S. W. corner of said sec. 6; thence S. 77° W. 5,000 vrs. to S. E. corner of No. 324 (school land); thence N. 13° W. 5,000 vrs. to mound 3 feet high, N. E. corner of 324; thence N. 77° E. 5,000 vrs. to the beginning."

The sketch of this block of county school land surveys, consisting of 81 leagues, showed that the western lines of leagues 322 and 325 connected with the eastern lines of the Texas & Pacific surveys Nos. 2 and 6, to the extent indicated by their calls, and also with the line of section 3 lying between sections Nos. 2 and 6.

If we should follow the decision of the Supreme Court in Steward v. Coleman County, 95 Tex. 445, 67 S. W. 1016, as was done by this court in Lewright v. Travis County, 54 Tex. Civ. App. 540, 118 S. W. 725, we would affirm the judgment of the trial court. As was said in the latter case:

"In its final analysis this decision (Steward v. Coleman County) means that, in ascertaining the boundaries of county school lands, such construction will be given to the field notes so returned to the land office as to give to the county the benefit of those calls that are most favorable to" the county.

We do not think that the article of the statute referred to admits of such construction. Nothing but a firm conviction of the correctness of our views herein would induce us to decline to follow an opinion of the Supreme Court of this state, and especially one written by the learned judge who wrote the opinion in Steward v. Coleman County, whom we regard as one of the ablest jurists who ever sat upon the supreme bench of this or any other state. The writer of this opinion, who speaks for this court, is not conscious of being influenced herein by the fact that he was of counsel for Steward in the Coleman County Case. That case was settled long ago, and Steward is in his grave. The act in question was not referred to in the Coleman County Case, supra, in the trial court, nor in the briefs or arguments of counsel in the Court of Civil Appeals, as the record, which we have to-day examined, shows, nor in the Supreme Court, except in a supplemental argument filed on behalf of the county, of which the writer knows, by reason of having been of counsel in that case, counsel for Steward had no notice of. By reason of the fact that the case was compromised, Steward did not file a motion for rehearing in the Supreme Court. For these reasons we do not think that the Supreme Court gave their usual mature consideration to the interpretation of article 4269 above set out. In fact, for reasons hereinafter stated, we think that all that was said in that case in reference to this article was dicta.

In the concluding portion of the opinion in

Steward v. Coleman County, supra, the court says:

"It will not do to say that the language 'lands included within the lines as returned to the general land office' means merely such lands as are found on a trial of the question of boundary, to be so included; for that construction would make this provision wholly useless."

On the contrary, the act might be very useful to a county or counties. In ordinary trials of questions of boundary calls for natural objects take precedence over calls for distance and quantity. But this statute reverses the rule, and declares that:

"The calls for distance shall have precedence and control calls for rivers or natural objects when the calls for distance will give the quantity of land intended to be included in the survey and calls for natural objects or rivers will not."

Thus, if a county school land survey called to begin at a known corner, and to run thence a given course and distance for another corner on the bank of a river or creek, and such natural object would be reached short of the distance called for, thereby reducing the intended area of the survey, this act, if the land beyond the river or creek was vacant, so that vested rights would not be interfered with, extended such lines the distance called for in the field notes, and appropriated such additional land to the county. If the Legislature did not have one or more such surveys as this in mind, then, indeed, all that portion of the statute referring to calls for natural objects or to course and distance was indeed useless. If a number of such surveys had been made and returned to the land office, great loss might have occurred to the counties but for the passage of this act, and that is just what the emergency clause of the act declares. There is no hint in the act that the Legislature intended to favor counties by giving them more land than the field notes of their surveys called for, but only that under the conditions mentioned they should not lose any part of the quantity of the land to which they were entitled under the laws of this state.

But this act might have been beneficial to counties in another respect. It declared that all surveys for county school lands theretofore made and returned to the general land office according to law were "valid surveys," from which it might be inferred that the Legislature was informed that some surveys had been made and the field notes returned to the land office as required by law, which were not valid surveys. That such was the main purpose of said act appears from its enacting clause, which reads:

"An act to validate certain surveys heretofore informally or defectively made, in locating the county school lands of this state."

Surveys which have been legally made and returned to the land office, but which by reason of their calls for natural objects did not include within their lines the quantity of land intended, did not need validat-ing. They were already valid surveys, whether made upon the ground or by protraction, and included all of the land within their lines, as the location of such lines might be fixed by the rules governing the location of boundaries.

The act referred to declares the counties to be the owner of "the lands included within the lines of said surveys, as returned to the general land office." Section 1. The field notes of a survey are in all cases the field notes returned to the land office. The owner of a valid certificate is the owner, in all cases, of the land included within the lines of his survey, though it is frequently a mooted question as to what lands are so included.

In Steward v. Coleman County, supra, the court lays stress upon the words "the lands included within the lines of said surveys, as returned to the general land office." The word survey is here used as synonymous with "field notes." It was the "field notes" which the law required to be returned to the land office. The survey, accurately speaking, is the land included in such field notes, not necessarily as shown by the calls therein for course and distance, nor for lines of prior surveys, nor for natural or artificial objects, but whichever of one or more such calls most correctly showed, under the facts and circumstances of a given case, what land was embraced within the survey. In every instance the surveyor was required by the statute to return with, and as a part of his field notes a "diagram" or map of his survey (Rev. St. 1911, art. 5336); but this diagram or map, while it might aid in construing the field notes, was at most, only a part of such field notes or survey, and could in no proper sense be said to be "the survey" returned to the land office. And this the Legislature is presumed to have known, and, if it was intended that the map or diagram returned by the surveyor should control all other portions of the field notes, it is but fair to the Legislature to presume that it would have said so. But, instead of so doing, the word "map" or "diagram" is not used in said act. Such maps or diagrams have always been held to be admissible in evidence on the issue of boundary, but they have never been given controlling effect in locating the lines of surveys. In every instance where a survey calls to begin upon one survey and run to another survey, if the surveyor did his duty, he returned with his field notes a diagram showing that his survey covered all of the vacancy between such prior surveys; but, notwithstanding such map, and the calls for the lines and corners of the prior surveys, it has been held in many cases that the survey, as shown by the field notes returned to the land office, did not embrace all of such vacancy. All this the Legislature is presumed to have known, and, in the absence of anything appearing to the contrary, is presumed to have used the

words "the land included in the lines of said surveys as returned to the general land office" in the ordinary sense of those words.

That portion of the act declaring that the counties are the owners of the lands included within their surveys, taken by itself, was useless, and added nothing to the rights of the counties. They were, by virtue of the Constitution and the laws regulating the location of vacant lands, already the owners of "the lands included within the lines" of their surveys, if the same were valid surveys. But, when taken in connection with the previous portion of the act which validated such surveys, and with the subsequent portion of the act, which extended the lines of the surveys the distance required to give the quantity intended, it was very useful to the counties having surveys to which it was applicable.

We have said in a previous portion of this opinion that we regard all that was said in the Coleman County Case with reference to the act there referred to as dicta. Our reason for this statement is this: The act, by its terms, applies only to two classes of county school land surveys; one where the survey made and returned to the land office within the time and manner required by law was invalid; the other where, by reason of calls for natural objects, the lines of the surveys were shorter than the distance called for in the field notes, and for that reason the survey did not embrace the quantity of land intended. In the Coleman county survey there was no question as to the validity of the survey, and there was no call for a river or other natural object. The call to which it was sought to extend the line was a call for an open and unmarked prairie line, which might or might not control the call for distance without reference to said act. It was not sought by the county to give "precedence and control" to "the call for distance," but to ignore such call in favor of a call, not for a natural object, but which, at most, was a call for an artificial object. It was not sought to give such control to the call for the lines of older surveys in order to give the county "the quantity of land included in the survey," but in order to give it about 1,500 acres more than such quantity, all of which appears from the opinion in that case.

The constitutionality of the act referred to, in so far as it relates to the construction of field notes, may be questionable, as not being disclosed by the caption of the act, but, as this issue has not been presented in this case, we will not pass upon it.

[3] We sustain appellants' assignments of error for another reason. Article 4269, R. S. 1895, is, by its terms, applicable only to surveys which had been patented at the time such act was passed. It was approved March 21, 1883, and took effect from and

after its passage. The La Salle county surveys were patented November 1, 1883.

For the reasons stated, the judgment of the trial court herein is reversed, and the cause is remanded.

Reversed and remanded.

### On Motion for Rehearing.

[4] This is a boundary suit, and La Salle county was made a party on its warranty. There is no question as to the title of La Salle county to the land described in its patents. That is the land, and no other, which was sold by La Salle county. No survey was made, and no particular land was pointed out to the purchasers. Whether it shall be determined that the La Salle county school lands are located to the west and south, as contended by appellees, or to the north and east, as contended by appellants, is immaterial so far as La Salle county is concerned, as in either event its grantees will get the land described in their deeds; such description being the same as in the patents. As in no event could any judgment be rendered against La Salle county on its warranty, the motion of said county for a rehearing is granted, and the judgment of the trial court in its favor is affirmed.

Motion granted.