## STATE v. STANOLIND OIL & GAS CO. et al.

### No. 3383.

Court of Civil Appeals of Texas. El Paso.

June 11, 1936.

Rehearing Denied July 30, 1936.

Mark McMahon, Gillis Johnson, and Warren Scarborough, all of Fort Worth, Hart Johnson, of Fort Stockton, William McCraw, Atty. Gen., H. Grady Chandler and Russell Rentfro, Asst. Attys. Gen., and Robt. L. Ball and Charles W. Trueheart, both of San Antonio, for the State.

R. E. Seagler and Lee M. Sharrar, both of Houston, Thompson, Mitchell, Thompson & Young and Truman Post Young, all of St. Louis, Mo., Geo. T. Wilson and Robt. T. Neill, both of San Angelo, J. B. Dibrell, Jr., of Coleman, John Sayles, of Abilene, R. C. Gwilliam, of Tulsa, Okl., John Perkins, of Midland, Phillips, Trammell, Chizum, Estes & Edwards and Hiner & Pannill, all of Fort Worth, Thompson, Knight, Baker & Harris, of Dallas, Vinson, Elkins, Sweeton & Weems and C. E. Bryson, all of Houston, Walter L. Kimmel, of Tulsa, Okl., Turner, Rodgers & Winn, of Dallas, Clay Tallman and Donald Campbell, both of Tulsa, Okl., and Smith & Smith and Myron A. Smith, all of Fort Worth, of counsel, for appellees.

Gibbs & Williams, of San Angelo, for Douglas Oil Co. on rehearing.

Wagstaff, Harwell, Wagstaff & Douhit, of Abilene, for Geo. Theisen, amicus curiæ, on rehearing.

HIGGINS, Justice (after stating the case as above).

Briefly stated, the theory of the state primarily is that the car spring corner is the original S.E. corner of River survey 70 as located by Kuechler; the S.W. corner of 70, which is the beginning corner of survey 3, is 4,112 varas west of the S.E. corner of 70. From this S.W. corner of 70, survey No. 3 is to be located according to the course and distance calls of its corrected field notes disregarding the calls for the N.W. and S.W. corners of River surveys 69, 68, 67, 545, and 65. Then the T. C. Ry. Co. surveys are to be connected with the south line of 3 and located according to the course and distance calls of their corrected field notes. This would place the south line of the T. C. Ry. Co. surveys 215 varas north of Yates 34½ leaving intervening the land sued for. Wherefore the state was entitled to a peremptory charge in its favor.

Briefly stated, the theory of the defendants primarily is as follows: The calls in the field notes of 3 for said corners of said River surveys control the distance calls; the surveys in block 1 are a connected system of surveys made by the same surveyor; none of Kuechler's original corners upon the river can be identified except the common S.E. corner of 70 and N.E. corner of 69 on the north and on the south the N.E. corner of 60 and S.E. corner of 61, marked by an I. R. Rock, identified and established as the common corner of 60 and 61 in the Holcomb suit above mentioned. Between these two established corners there is an excess of 387 varas over the field note calls, which excess is to be prorated between the intervening surveys, which would give to the west lines of 69, 68, 67, 545, and 65, each an excess of 43 varas, thus placing the south lines of 3 and the T. C. Ry. Co. surveys 215 varas south of their location according to the state's theory; and embracing in the T. C. Ry. Co. surveys the alleged vacancy because the south line of the T. C. Ry. Co. surveys would then be coincident with the most southern north line of Yates 34½. This theory assumes that Dod correctly located and marked the original N. W. and S.W. corners and west lines of surveys 61 to 69, inclusive.

An alternative theory of some of the defendants, as heretofore stated, is that if the area in controversy is not in the T. C. Ry. surveys, then it is in Yates survey 34½.

For the disposition of the first two theories we assume as correct the appellant's contention that the car spring corner correctly marks the original S.E. corner of survey 70. For the same purpose we accept as correct the appellees' insistence that the original corners on the river between said corner of 70 and the S.E. corner of 61 and

N.E. corner of 60 cannot be now identified upon the ground.

We also unconditionally hold the I. R. rock referred to in the evidence and the record in the Holcomb case marks the original common corner of surveys 61 and 60. The undisputed evidence so shows, and the judgment in the Holcomb case so adjudicated. The state was a party to that suit and is bound by its pleading in that case and the judgment which it sought and obtained so adjudicating such issue.

The undisputed evidence also shows that between the car spring corner and said I. R. rock there is an excess in distance over Kuechler's distance calls.

From the brief of one of the appellees we quote showing the surveyor, the year of his survey, and the excesses found:

| "Surveyor: | Year: | Excess: |
| --- | --- | --- |
| O. W. Williams | 1892 | 302 |
| R. S. Dod | 1917 | 190 |
| R. S. Dod | 1919 | 387 |
| H. L. George | 1934 | 330.7 |
| J. B. Zant | 1934 | 330.7 |
| J. J. Goodfellow | 1934 | 326 |
| J. J. Goodfellow | 1934 | 324.1" |

■ We also unconditionally hold that block 1 is a system of connected surveys made by the same surveyor at the same time; the surveys being built one upon the other from the south to the north. In such situations the courts have adopted the rule of prorating the excess between the several intervening surveys. Turner v. Smith, supra, and cases there cited.

The facts render such rule applicable to this case.

It was in conformity with this rule that Dod, under the instructions of the land commissioner, established and monumented the N.W. and S.W. corners of the River surveys by apportioning to each survey an excess of 43 varas north and south in the length of their east and west boundary lines and returned corrected field notes. The excess apportionment was based upon his traverse made in 1919.

If appellees' theory is to be sustained, it must be held that the field note calls of survey 3 for stakes and mounds at said corners of surveys 65 to 69, inclusive, as a matter of law, prevail over and control the several 950 varas distance calls so as to extend the east and west lines of survey 3, 215 varas south of their distance calls.

■ Under the undisputed facts this should not be done, but the distance calls should prevail.

In Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317, a survey line was called to run from a marked corner a certain course and distance to a corner "on stake in prairie." The stake had disappeared. However, there was evidence tending to show where the stake was originally placed. Chief Justice Gaines held the stake was an artificial object; its mention could not be disregarded, and if the place where it was originally located could be established, it fixed the corner with the same certainty as if it had been marked by a permanent object and the variant distance call should yield to it. The ruling in that case does not apply here, for the stakes and mounds referred to in the Kuechler field notes of the River surveys as marking the N.W. and S.W. corners were fictitious calls. There were no such stakes and mounds so placed. Those corners were imaginary points. The testimony of Lungkwitz so shows, and it is so recognized by all parties. And, as later shown, the locations of those corners are uncertain.

Maddox v. Fenner, 79 Tex. 279, 15 S.W. 237, 239, is the leading case in this state upon the question of whether course and distance shall yield to a call for an unmarked line of another survey. Justice Henry said: "When unmarked lines of adjacent surveys are called for, and when, from the other calls of such adjacent surveys, the position of such unmarked lines can be ascertained with accuracy, and when, in the absence of all evidence as to how the survey was actually made, there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, we see no good reason why the survey line should not be given the dignity of an 'artificial object,' and prevail over course and distance." He also said, "Probably no general rule on the subject can be safely announced."

That case accords to an unmarked line the dignity of an "artificial object" entitling it to prevail over course and distance when it can be ascertained with accuracy. The subsequent authorities have recognized such limitation upon the dignity and controlling effect of an unmarked line.

In Braumiller v. Burke, 112 Tex. 387, 247 S.W. 501, 502, Judge German, answering certified question, said: "The rule that a

call for an unmarked line of an adjacent survey is superior to call for course and distance is not a rule of absolute application, and a call for the line of an adjoining survey should not prevail over a call for distance, unless such line can be located with reasonable certainty and accuracy. Hermann v. Thomas (Tex.Civ.App.) 168 S.W. 1037; Polk County v. Stevens (Tex.Civ. App.) 143 S.W. 204; Crosby v. Stevenson (Tex.Civ.App.) 156 S.W. 1110."

This opinion was adopted by the Supreme Court.

In Hermann v. Thomas (Tex.Civ.App.) 168 S.W. 1037, 1048, this court held:

"It has been held that a call for course and distance should not be subordinated to a call for an unmarked line which could not, of itself, be ascertained, except by running course and distance from an established point. Gerald v. Freeman, 68 Tex. 201, 4 S.W. 256; Johnson v. Archibald, 78 Tex. 96, 14 S.W. 266, 22 Am.St.Rep. 27; Robertson v. Mooney, 1 Tex.Civ.App. 379, 21 S.W. 143.

"The leading case of Gerald v. Freeman, announcing this rule, however, has been subsequently explained, and the general rule thus announced somewhat limited, and it now seems to be the settled law that when the unmarked line of an adjacent survey is called for, and when from the other calls of such adjacent survey the position of such unmarked line can be ascertained with accuracy, and there is an absence of evidence as to how the survey was actually made, and there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, there is no reason why the survey line should not be given the dignity of an artificial object and prevail over course and distance. Maddox v. Fenner, 79 Tex. 279, 15 S.W. 237; Wood v. Cahill, 21 Tex.Civ.App. 38, 50 S.W. 1071; Goodson v. Fitzgerald (Tex.Civ.App.) 135 S.W. 696; State v. Russell, 38 Tex.Civ.App. 13, 85 S.W. 288; Steusoff v. Jackson, 40 Tex.Civ.App. 328, 89 S.W. 445; Davis v. Baylor (Tex.Sup.) 19 S.W. 523; Langermann v. Nichols (Tex.Civ.App.) 32 S.W. 124; Coleman County v. Stewart (Tex.Civ. App.) 65 S.W. 383; Shindler v. Lutcher & Moore Lumber Co. (Tex.Civ.App.) 107 S. W. 941; Baker v. Light, 80 Tex. 627, 16 S. W. 330. This doctrine was applied in the case of Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317, where there was a call for 13,400 varas to stake in prairie. The stake had disappeared. It was held to be an arti-

ficial object, and, if the place where it was originally located could be established, the call for distance should yield to it; and it was held proper to extend the line an additional 1,200 varas to reach the point where the stake has been originally located. To the same effect is Wm. M. Rice Institute v. Gieseke (Tex.Civ.App.) 154 S.W. 612.

"But we apprehend this rule does not apply, and a call for the line of an adjoining survey should not be permitted to prevail over a call for distance, unless such line itself can be located with reasonable accuracy and certainty. If the line of the adjoining survey so called for cannot be so located, it should be disregarded, and the terminus fixed according to the call for distance. Polk County v. Stevens (Tex.Civ.App.) 143 S.W. 204; Bigham v. McDowell, 69 Tex. 100, 7 S.W. 315. To do otherwise would be to accord to uncertainty precedence over that which is certain."

See, also, Polk County v. Stevens (Tex. Civ.App.) 143 S.W. 204; Stein v. Roberts (Tex.Civ.App.) 217. S.W. 166, and Taylor v. Higgins O. & F. Co. (Tex.Civ.App.) 2 S.W.(2d) 288.

The ruling of this court in Turner v. Smith, giving controlling effect to adjoinder calls, was based upon Turner's assumption that the true location of the corners and lines called for could "be accurately and certainly determined." See Smith v. Turner (Tex.Civ.App.) 13 S.W.(2d) 152, at page 167.

In the case at bar the west lines of the River surveys were not actually run and the west corners established upon the ground by Kuechler. The undisputed evidence shows an excess in distance between the car spring corner and S.E. 61. But no two surveyors reach the same result except George and Zant, who surveyed together. The variances are not great, but due to the westward trend of the river and some of its sharp meanderings these slight variances may affect very materially the location of the west corners and lines. The evidence in fact also leaves uncertain the exact original location of S.E. 70. The proration rule adopted by Dod and insisted upon by appellees as correctly locating the original corners on the west of the River surveys is based upon a rule of law. The rule is founded upon presumption. It is a rule of necessity when by no other means can lost corners and lines in a system of surveys be found. It cannot be said the rule in fact accurately and certainly located the lost cor-

ners on the west ends of the River surveys. It is impossible to determine where or how Kuechler's error in his distance calls occurred. He ran his traverse from north to south. He may have made no error in his calls from S.E. 70 to S.E. 65. His error may have occurred between S.E. 65 and the I. R. rock at S.E. 61. In that event the original corners on the west of 69, 68, 67, 545, and 65, are where Kuechler's distance calls place them, and not where the proration rule and Dod's survey places them. In order for the original corners on the west of the surveys last mentioned to have been located by Kuechler where the proration rule and Dod's survey places them, Kuechler must have made a uniform error of 43 varas north and south in the measurement of the east line of each survey between 70 and 60. It is unreasonable to assume such a uniform error. Or it must be assumed Kuechler deliberately gave each of the intervening surveys an excess north and south of 43 varas. Such presumption will not be indulged, and it is refuted by Lungkwitz's testimony that he checked the chains and the chainmen and the measurements were accurately taken and recorded.

We hold there is not that certainty in the true location of the west corners and lines of the River surveys which give them the dignity of artificial objects entitling the adjoinder calls in the field notes of survey 3 to prevail over the distance calls.

In this connection there is this further situation with respect to which the majority opinion in Turner v. Smith is controlling: In constructing the field notes of survey 3, Durrell did not actually know the ground location of the west corners and lines of the River surveys. He assumed they were located where Kuechler's field notes placed them. It was Durrell's purpose to locate survey 3 so as to embrace one league (25,- 000,000 square varas) of land and no more. The S.W. corner of 69, and N.W. and S. W. corners of 68, 67, 545, and 65, as located by Dod, are not in the positions Durrell supposed those corners to be. The S.W. corner of 65, for example, is 215 varas south of and some distance east of where Durrell supposed it to be. Such distance variances also places the positions of the west lines of 68, 67, 545, and 65 at positions different from where they were supposed to be by Durrell.

In this situation the ruling of the majority of the Supreme Court in Turner v. Smith, supra, which this court must follow, controls. We refer to those portions of Justice Pierson's opinion where he said:

"From the sketch which Durrell returned with his field notes in January, 1884, it is obvious that he was mistaken as to the true position of the Pecos river and of the river surveys. His sketch shows a distant break in the river between survey 540, block 12, and survey 72, block 1, indicating that he called for the river surveys without knowledge of their true positions. It is an elementary principle of boundary law that a supposititious call, made upon an erroneous belief as to the location of an object, will not prevail over a call for course and distance, whether the survey was actually made upon the ground or was an office survey. 7 Tex.Jurisprudence, pp. 171, 172; New York & T. Land Co. v. Thomson, 83 Tex. 169, 17 S.W. 920; Findlay v. State (Tex. Civ.App.) 238 S.W. 956; Holdsworth v. Gates, 50 Tex.Civ.App. 347, 110 S.W. 537. * * *

"As to the surveys in block 178 for which Durrell called to adjoin on the south, his own testimony in this case, as well as his sketch and field notes, demonstrate that he did not know their true positions, but called for them merely by conjecture. As before stated, the rule is well established that a call for adjoinder with an unmarked line made upon misapprehension, mistake, or conjecture will be disregarded, and the junior survey located according to course and distance from the nearest established corners, and this is true, regardless of whether the entire junior survey was actually run out on the ground, or was wholly or in part an office survey. (See authorities cited, supra.)"

Appellees question the soundness of the majority ruling in Turner v. Smith. That is a question upon which this court cannot sit in judgment. The Supreme Court overruled this court in the case. It is the duty of this court to follow the ruling of the Supreme Court majority. We, therefore, for the reasons stated, hold survey 3 is to be located by its course and distance calls from its beginning corner, disregarding the calls for N.W. and S.W. corners of 69 to 65, inclusive.

We have not undertaken to review and differentiate the numerous boundary cases relied upon by the respective parties. The different conclusions reached in various cases merely demonstrate the soundness of Judge Henry's remark in Maddox v. Fen-

ner, that no general rule upon the subject can safely be announced.

Appellees also assert that if the adjoinder calls, under the ordinary rules of boundary, do not prevail over the distance calls, then by virtue of an act approved and effective March 21, 1883 (9 Gammel's Laws, 334, 335) and carried forward into the codification of 1895 as article 4269, the calls in survey 3 for the corners of surveys 65 to 69, inclusive, are to be given controlling effect.

In this connection and as supporting this theory, see Steward v. Coleman County, 95 Tex. 445, 67 S.W. 1016; Cross v. Wilkinson, 111 Tex. 311, 234 S.W. 68; and Lewright v. Travis County, 54 Tex.Civ.App. 540, 118 S.W. 725.

The act mentioned reads:

"An Act to Validate Certain Surveys, heretofore Informally or Defectively made in Locating the County School Lands of this State.

"That the surveys of all county school lands heretofore made, either actually on the ground or by protraction, and returned into the General Land Office, according to law, and upon which patents have been issued, are hereby declared valid surveys, and the title to the lands included within the lines of said surveys, as returned to the General Land Office, is hereby vested in the counties for which the same were made; and in all such surveys the call for distance shall have precedence and control calls for rivers or natural objects, when the calls for distance will give the quantity of land intended to be included in the survey, and the calls for natural objects or rivers will not; provided, this act shall not divest any vested right."

The act was retrospective in its operation. The language of the caption and the body of the act itself so implies. Survey 3 was not patented until subsequent to the passage of the act for which reason the survey is not within the operation of the original act. This view renders it unnecessary to decide whether the act is invalid because the boundary rules therein declared were not authorized by the caption.

Nor could the re-enactment of the act by its incorporation in the codification of 1895 render it applicable to survey 3, because in the meantime there had intervened and vested the rights of the owners of T. C. Ry. surveys 101 and 103 and the public free schools as the owner of surveys 102 and 104. Those surveys had been located previous to 1895, south of and adjoining survey 3 as the latter had been located under the ordinary rules of boundary. The vested rights of the owners of the T. C. Ry. surveys could not be divested by shifting such surveys southward 215 varas through the re-enactment in 1895.

■ The boundary issue here involved is unaffected by the law in question.

The alternative theory of some of the appellees that if the area in controversy is not in the T. C. survey it is in Yates 34½ must be overruled under the decision of the majority of the Supreme Court in Turner v. Smith, supra. With respect to that theory the facts here present an analogous situation. Under the majority ruling it must be held that the lower north line of 34½ is located by Dod's field notes where the state contends it to be; that the calls in such field notes for surveys 101 to 104 must be construed as calls for said surveys in the position which Dod, under the instructions of the land commissioner, had erroneously assumed them to be; or else such calls must be rejected as mistaken ones.

Appellees submit various other propositions, unrelated to boundary law, in support of the judgment rendered. Such propositions are based upon the law of estoppel in pais and by judgment, stare decisis, ratification, the rights of bona fide purchasers for value, etc. These various propositions have been fully and carefully considered. They are regarded as presenting no ground for affirmance and unnecessary to discuss. Discussion thereof would unnecessarily lengthen this opinion now too long. Suffice it to say the proper disposition of this case is controlled by the law of boundaries. The only fact issue necessary to be determined in the disposition of the boundary issue is the true location of the S.E. corner of survey 70 as it was established by Kuechler. Such location is an issue of fact raised by the evidence.

The judgment is reversed, and the cause remanded, with instructions to hear evidence and determine the location of the S. E. corner of survey 70, as it was located by Kuechler, and render judgment in conformity with such location and this opinion.

The court will also hear evidence upon the issue of damages and render judgment accordingly.

The order of dismissal as to Simms Oil Company, entered upon motion of plaintiff, is not disturbed by the judgment of this court.

Upon the submission of the appeal Justice WALTHALL was ill and unable to hear the argument. He, therefore, has not' participated in this decision.

Reversed and remanded, with instructions.

### On Rehearing.

In the opinion it is said: "According to the testimony of appellees' witnesses Dod located the S. E. corner of 70 at the point 50 varas west and 47.3 varas north from the car spring corner."

This is corrected so as to read: "According to the testimony of appellees' witnesses, Dod located the S. E. corner of 70 at the car spring corner, or at a point about 12 varas west of said car spring corner."

With this correction, all motions upon rehearing are overruled.