JESSE F. CROSS ET AL. v. ED. WILKINSON ET AL.

No. 2884.   Decided October 19, 1921.

(234 S. W., 68.)

1.—County School Land—Boundaries—Calls—Statute.

It was the plain purpose of article 4269, Revised Statutes, (Act of March 21, 1883, Laws, 18th Leg., p. 28) to put the boundary lines of county school lands, as returned to the General Land Office and carried into patents, beyond attack by foreign and extrinsic evidence.  This was admissible in other cases, to show where the lines were actually run, upon an inconsistency being shown in boundary calls as applied to the land. such as calls for distance, and those for lines of adjacent surveys.  (Pp. 315, 316).

2.—Same—Case Stated.

A survey of school land beginning at a known corner called to run course and distance to an older survey; but the distance was exhausted and the *quantum* of land obtained before reaching such older survey.  There were no bearings or artificial land marks to designate this boundary line, and the sketch accompanying the field notes and returned to the Land Office showed the West line of the school land to be the same as the East line of the older survey.  *Held* that under the statute (Rev. Stats., art. 4269) the call for the older survey conclusively prevailed over that for course and distance. (Pp. 314-316).

3.—Cases Approved and Followed.

Steward v. Coleman County, 95 Texas, 445; followed also in Lewright v. Travis County, 118 S. W., 725, is approved and followed.   (P. 316).

4.—Statutory Construction.

·A construction of a clause in a statute which would deprive its words ,of all force and effect, leaving the law as though they had not been inserted, is not admissible.  (Pp. 316, 317).

5.—Same—Stare Decisis.

The rule of *stare decisis* applies with special strictness to a decision construing a statute on which the public have relied in making contracts and acquiring land titles for nearly twenty years.  (P. 317).

6.—Statute—Readoption by Revision.

If the Act of March 21, 1883, applied only to surveys of school land made prior to its enactment, its subsequent inclusion in the Revised Statutes as article 4269 extended its application to surveys made in the interim between its original passage and its reenactment in the revision.  Greene v. Robison, 109 Texas, 367, followed.·  (P. 317).

Questions certified to the Supreme Court from the Court of Civil Appeals for the Fifth District, on error from Travis County.

*A. H. Kirby, E. H. Yeiser,* and *Theodore Mack,* for plaintiffs in error.

The act of 1883, page 28, while not carried forward in the Revised Statutes of 1911, was carried forward as Art. 4269, of the R. S. of

1895. This, under Section 19 of the final title of R. S. 1895, is to be construed merely as a continuation, and not as a new enactment of the Act of March 21, 1883, which Act related to Surveys of all County School Lands "heretofore made and returned into the General Land Office, according to law, and to which patents have issued." Therefore, the proper construction to be applied to that Act is that the Legislature intended to limit the provisions of the Act to those Surveys which had theretofore been made and returned into the General Land Office, and upon which patents had been issued, the Act being a curative Act only embraced lands upon which patents had already been issued, and Article 4269 of the R. S. of 1895 must be construed as would be the Act of March 21, 1883. Therefore, since the undisputed evidence showed that at the time of the passage of the Act of March 21, 1883 (Regular Session 18th Legislature, page 28), the Patents to LaSalle County had not issued, and in fact did not issue until November 1st, 1883, it was error in the Court to apply the provisions of that Act to the case at bar, and accordingly to direct an instructed verdict. Hartford Fire Insurance Co. v. Walker, 94 Texas, 473, 61 S. W., 711; McKenzie v. Commissioner General Land Office, 88 Texas, 669; 32 S. W., 1038; Marston v. Yaites, 66 S. W., 867; Moffett v. Moffett, 67 Texas, 642.

In none of the League Surveys granted to LaSalle County do the field notes call for rivers or other natural objects. Consequently there is no conflict in any call for distance as against any call for rivers or natural objects. The calls for distance in the field notes of these surveys gave the quantity of land intended to be granted in each survey, to-wit: 5,000 varas square; hence the provision in the Act of March 21, 1883, R. S. 1895, Art. 4269, to the effect that the calls for distance shall have precedence and control calls for rivers or other natural objects when the call for distance will give the quantity of land intended to be conveyed in the survey and the call for natural objects or rivers will not, could not apply to the case at bar since the undisputed facts did not bring the case at bar within the spirit, meaning or intent of the Act referred to; hence to say that this Act controlled and demanded an instructed verdict, is erroneous.

Where part of the lines of the survey are made on the ground, as is shown in the case of the LaSalle County school lands by the testimony of the surveyor, inconsistent calls for other surveys such as the T. & P. survey at South East corner of League 325 and South East corner of League 245, evidently called for by estimation of distance, will be disregarded, and calls for course and distance will control. Boon v. Hunter, 62 Texas, 591; Gregg v. Hill, 82 Texas, 409; Oliver v. Mahoney, 61 Texas, 612; Johnson v. Archibald, 78 Texas, 102; Montague County v. Land & Cattle Co., 80 Texas, 399.

A call for a point in an open creating confusion will not control course and distance, and when the corner to be established is to be located at all events by course and distance, it must be located by the calls of its own field notes. Booth v. Strippleman, 26 Texas, 442; Davidson v. Killen, 68 Texas, 408; Gerald v. Freeman, 68 Texas, 201; Duff. v. Moore, 68 Texas, 270; Kuechler v. Wilson, 82 Texas, 645; Thompson v. Langdon, 87 Texas, 258; Randall v. Gill, 77 Texas, 354; Fordtran v. Ellis, 58 Texas, 245; Robertson v. Mooney, 1 Texas Civ. App., 381; Tippen v. McCampbell, 26 S. W., 647; Upshur Co. v. Lewright, 101 S. W., 1013; Polk Co. v. Stevens, 143 S. W., 207.

A marked line is one that can be located without having to run out the lines of the survey of which it forms a part. Therefore the T. & P. lines called for at the S. E. corner of leagues 325 and 245 were not marked lines. Davidson v. Killeen, 68 Texas, 406; Gerald v. Freeman, 68 Texas, 201; Duff v. Moore, 68 Texas, 270; Steusoff v. Jackson, 89 S. W., 447; Goodson v. Fitzgerald, 90 S. W., 901; Polk Co. v. Stephens, 143 S. W., 207; Byrd v. Langbein, 135 S. W., 206; Wiley v. Lindley, 56 S. W., 1003.

A call for a point in an open line will not control course and distance. McCown v. Hill, 26 Texas, 361; Browning v. Atkison, 37 Texas, 659; Woods v. Robinson, 58 Texas, 661; McAnninch v. Freeman, 69 Texas, 445; Baker v. Light, 80 Texas, 633.

Since the evidence clearly established that Moore in putting in the league surveys called for the southwest corner of League 255 in Concho drain, and in the field notes of League 249 going north on east line, called for Concho channel at 2800 varas, and for Concho channel at 3800 varas, and since these points can be clearly and unmistakeably identified, and there being no identified lines or corners intervening between these points and the LaSalle County School Lands, the leagues of the system lying south of these points must be constructed only according to the calls in their own field notes.

*Morrow & Morrow* and *Chas. L. Black*, for defendant in error.
It appearing from the evidence that the T. & P. Ry. Co. surveys made on the ground were made in 1876 and that the lines of said surveys contiguous to the school land leagues were marked with pits and mounds, which were in existence when the leagues were surveyed in 1881 or 1882, and the original surveyor of the school land surveys having certified at the time he returned the field notes of said league surveys to the land office in 1882, that the league surveys were contiguous to the Texas & Pacific surveys, and having at that time sworn to the same, and having on the trial of this cause affirmed the correctness of said certificate, and oath made at the time he returned the field notes, and there being no natural or artificial object in the field notes of the league surveys inconsistant with said certificate, no judgment was authorized other than that the league surveys

and the Texas & Pacific surveys were contiguous. Worthington v.
Baughman, 84 Texas, 480; Freeman v. Mahoney, 57 Texas, 621;
Moore v. Stewart, 7 S. W. 771; Crosby v. Stevens, 156 S. W. 1115;
Sanborn v. Gunter, 84 Texas, 297; Phillips v. Ayres, 45 Texas, 606.

The school land surveys in question having been regularly re-
turned to the Land Office in 1882, and patents having subsequently
issued according to said field notes, and no vested rights of third
parties having accrued prior to the issue of said patent, the pro-
visions of the Act of March 21, 1883, vested the title to all the land
in controversy in LaSalle County.

Even if the act of March 21st, 1883, does not apply to the LaSalle
County school land, the same are within the terms of the act of
1895, covering the same subject. R. S. 1895, Art. 4269; Lewright v.
Travis Co., 118 S. W. 725; Steward v. Coleman Co., 95 Texas, 445;
Ellwood v. Stallcup, 122 S. W. 907.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The certificate of the Honorable Court of Civil Appeals is as
follows:

"This suit involves the law of boundary, the issue being as to
whether there was a vacancy between the LaSalle County school land
and railroad surveys to the west of same; the LaSalle County school
land called to run course and distance to said railroad surveys. There
are no bearings or other natural or artificial monuments on the west
side of said school land, by which its lines and corners can be lo-
cated, unless the calls for said school land are to control over course
and distance.

"Article 4269, Rev. Stats., reads as follows: 'The surveys of all
county school lands heretofore made either actually on the ground or
by protraction, and returned to the general land office, according to
law, and upon which patents have issued, are hereby declared valid
surveys, and the titles to the lands included within the lines of said
surveys as returned to the general land office, are hereby vested in
the counties for which the same were made; and in all such surveys
the calls for distance shall have precedence and control calls for
rivers or natural objects when the calls for distance will give the
quantity of land intended to be included in the survey and the calls
for natural objects or rivers will not; provided this law shall not
divest any vested rights.'

"In Steward v. Coleman County, 95 Texas, 445 the Supreme
Court of this state held that, by virtue of this statute, the calls for the
unmarked lines of an older survey would prevail as to county school
lands over the calls for distance; and this decision was followed by
this court in Lewright v. Travis County, 118 S. W., 725. In the
instant case we held to the contrary,—that is to say, we held that
where the county school land survey began at a known corner and
called to run course and distance to an older survey, and the dis-

tance was exhausted and the quantum of land obtained in the school land survey before the older survey was reached, that the statute above quoted did not apply, but that the boundaries of said survey would be determined under the general law of boundary, without reference to said article of the statute.

"In the instant case the LaSalle County surveys were patented Nov. 1st, 1883. The article of the statute above referred to was approved March 21st, 1883, and took effect from and after its passage; for which reason, also, we held that said article did not apply to this case. A copy of our original opinion is hereto attached and made a part of this certificate. This case is now pending in this court on motion for rehearing and we have granted a motion to certify.

"With the foregoing statement and explanation, the Court of Civil Appeals for the Third District certifies to the Supreme Court the following material questions:

"1.—Do the calls of a county school land survey for the lines of older surveys control over distance by virtue of Art. 4269, of the Revised Civil Statutes?

"2.—The LaSalle County school lands, not having been patented prior to the taking effect of said act, does the same apply in this case?"

It appears from the opinion, made a part of the certificate, (187 S. W. 345), that a sketch of the LaSalle County school land surveys, returned with the field notes to the General Land Office, showed the west lines of the leagues to coincide with the East lines of the railroad surveys.

The facts certified show beyond any reasonable doubt that the land in controversy was included within the lines of the school land surveys as such lines were returned to the General Land Office.

The lines were returned by means of the field notes and the accompanying sketch. The field notes and the sketch were explicit in making the East line of the railroad surveys the West lines of the school land surveys. Under settled rules of construction, the calls in the field notes and sketch for adjacent lines were entitled to prevail over the variant calls for distance only. Maddox v. Fenner, 79 Texas, 291. Davis v. Baylor, 19 S. W., 524. That is to say, an inconsistency being shown between the calls for distance and the calls for the adjacent lines, on the application of the calls to the land itself, no other extrinsic facts being shown, the calls for distance would yield to the calls for the adjacent lines. Hence, the field notes and sketch, returned to the General Land Office, rightly interpreted as instruments in writing, gave the same boundary to the school land surveys on the West as to the railroad surveys on the East.

Prior to the Act of March 21, 1883, (afterwards article 4269 in the Revised Statutes of 1895), upon an inconsistency being shown

in land boundary calls, when applied to the ground, it was competent to show by extrinsic evidence the very footsteps of the surveyor; and, boundary controversies were adjudicated by establishing lines where they were found to have been actually run. Johnson v. Archibald, 78 Texas, 102; Thompson v. Langdon, 87 Texas, 258. Such extrinsic evidence, ordinarily undisclosed by any public archive or record, would often lead to adjudications wholly different from what would follow consideration of only the lines returned to the General Land Office. It was the plain purpose of the Act of 1883 to put the boundary lines of the mentioned county school lands, as returned to the General Land Office and as carried into patents, beyond attack by reason of such entirely foreign and extrinsic evidence.

Before the enactment of the statute, the inquiry in boundary disputes was for the lines *as actually run on the ground.* Under the statute, in ascertaining the boundaries of the school land surveys within its operation, the inquiry is changed and is for the lines *as returned to the Land Office.* To so hold is but to give their ordinary signification to the words: "the titles to the land included within the lines of said surveys, as returned to the General Land Office, are hereby vested in the counties for which the same were made."

The necessary effect of the statute being to make calls for lines and corners, in field notes of these county school lands, returned to the General Land Office and embodied in patents, prevail over contrary calls for distance, it was provided that the calls for distance be given precedence, when necessary to give the counties the intended acreage.

In Steward v. Coleman County, 95 Texas, 445, the surveyor mistook the width of the vacant land and supposed that the lines called for were at the distance recited. The calls for the lines were given conclusive effect by the Supreme Court, though the surveyor intended the survey to stop at the distance given and though there was an excess in area of 1500 acres, on the ground that the evident meaning of the statute was that title was to vest according to the lines "as stated on the face of the description filed in the Land Office."

In its opinion, the Court of Civil Appeals criticizes the portion of the opinion in Steward's case construing the statute and pronounces it dicta. The issue presented required a construction of the statute. The construction given the statute was determinative of the issue and indeed of the whole case. Judge Williams' opinion discloses that it was prepared with his usual care and sagacity, and we think it abundantly demonstrates the correctness of the conclusions announced. The Court of Civil Appeals had rightly followed the opinion as an authoritative construction of the statute in Lewright v. Travis County, 118 S. W., 725.

As pointed out in the opinion in Steward's case, it would violate a cardinal rule of construction not to give significance and effect to

the words of the statute declaring the legislative intent that the patented county school lands shall extend to the lines returned to the Land Office, it being possible to give significance and effect thereto. The words are deprived of all use and significance by the interpretation that these boundaries are to "be determined under the general law of boundary." For, that is the precise way in which the boundaries would have to be determined had the words referred to been omitted from the statute.

The fact that precedent and subsequent portions of the statute could still be given beneficial operation by no means justifies adopting a construction necessitating the virtual elimination of part of the statute. The statute, as construed herein and in Steward's case, is operative throughout and is a consistent whole, and, it subserves a wise and just policy in giving to persons dealing with these county school lands the assurance that they may rely on the boundary lines, returned to the General Land Office and approved there by the issuance of patents.

Were we inclined to give a different construction to the statute, the rule of *stare decisis* would preclude our doing so. For that rule applies with especial strictness to a decision construing a statute, on which individuals and the public have relied in making contracts and acquiring land titles for nearly twenty years.

We answer "Yes" to Question 1.

While the LaSalle County school lands were patented subsequent to the date on which the 1883 statute took effect, they were previously surveyed, with due return made of the field notes to the General Land Office, and they were patented before the statute was re-enacted in the Revised Civil Statutes of 1895. If previous issuance of patent, as well as a previous survey, was requisite to bring lands within the statute's operation, there could have been no reason for including the statute in the revision of 1895 except to extend the operation of the statute to the period intervening between its original enactment and 1895. In that event, the statute must be given application to lands patented during such intervening period. Greene v. Robison, 109 Texas, 367. On the other hand, if the statute, as originally enacted, applied to surveys previously made, whenever patented, it applies to this controversy. It follows that the statute applies under the facts of this case, and we answer "Yes" to Question 2.