Lucy MARMON et al., Petitioners,

v.

MUSTANG AVIATION, INC., Respondent.

No. B–389.

Supreme Court of Texas.

May 15, 1968.

Rehearing Denied July 10, 1968.

White, McElroy & White, B. Thomas McElroy, W. D. White and Adair Dyer, Jr., Dallas, for petitioners.

L. W. Anderson, Robert C. Johnson, Dallas, for respondent.

NORVELL, Justice.

This is an action for the wrongful deaths of Ernest F. Marmon, Max E. Green, Max W. McNeil and George G. Sherry, who lost their lives when an airplane crashed into a mesa near the town of Kim in southeastern Colorado. The controlling question, as stated by the Court of Civil Appeals, "is whether the law of Colorado, the place of the accident, or the law of Texas, the place of trial, shall be followed and applied." We are confronted with a problem of stare decisis and hold that the Colorado law applies.

The case was tried upon agreed facts and a complete and accurate statement is contained in the opinion of the Court of Civil Appeals. All of those killed were residents of Texas with the exception of George G. Sherry who resided in Illinois. They were on a business trip which originated in Texas. The plane was returning to Texas and had landed in Denver for a few minutes to refuel and obtain weather information. The defendant, Mustang Aviation, Inc., is a Texas corporation, and it was stipulated that the negligence of Mustang's pilot, also a resident of Texas, was the proximate cause of the plane crash and the death of the passengers.

Wrongful death statutes have been adopted in Texas, Colorado and Illinois. The Colorado law has a statutory limitation of $25,000.00 for each wrongful death. The Illinois limitation is $30,000.00. Texas has placed no limitation upon the amount of recovery.

The trial court rendered judgment in accordance with Colorado law. The Court of Civil Appeals affirmed. 416 S.W.2d 58. Petitioners here present the primary con-

tention that Texas law and not Colorado law is applicable to the case.

The Court of Civil Appeals in an able opinion sets forth the law of this state as heretofore declared by the Legislature and the Texas courts. This court has repeatedly held that our wrongful death statute, Article 4671,[1] does not have extra-territorial force. However, the lower appellate court calls attention to recent developments relating to the "most significant contacts rule" which is described as one of the newer concepts of conflicts of law. It is stated in the opinion that:

"We have been urged to adopt the new doctrine of most significant contacts. We find much merit in the doctrine, and, if free to act in a cause of first impression, we would be inclined to explore the doctrine more fully with a view to consideration of adoption. But we are bound by Article 4678 and the construction placed on the statute by the Supreme Court and by decisions of other courts of Texas. * * *"

■ The petitioner vigorously and ably argues that the State of Colorado actually has little concern with this unfortunate accident which took the lives of four Texans and one Illinois resident while they were returning to Texas on a business trip in behalf of a Texas based commercial activity, and points out that the defendant is a Texas corporation and that the negligent pilot was also a Texas resident. From these circumstances, it is contended that essentially this is a Texas controversy which should be controlled by Texas law.

The portions of our wrongful death statute which are applicable here are:

"Article 4671. Cause of action

" * * * An action for actual damages on account of the injuries causing the death of any person may be brought in the following cases:

"1. When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness, unskilfulness, or default of another person, association of persons, joint stock company, corporation * * * his, its or their agents or servants, such persons * * * shall be liable in damages for the injuries causing such death. * * *

"2. When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness, unskilfulness, or default of the proprietor, owner, charterer or hirer of any industrial or public utility plant, or any railroad, street railway, steamboat, stage-coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, wrongful act, neglect, carelessness, unskilfulness or default of his, their or its servants or agents, such proprietor, owner, charterer or hirer shall be liable in damages for the injuries causing such death. * * *"

"Art. 4672. Character of wrongful act

"The wrongful act, negligence, carelessness, unskilfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

"Art. 4678. Death in foreign State

"Whenever the death or personal injury of a citizen of this State or of the United States, or of any foreign country having equal treaty rights with the United States on behalf of its citizens, has been or may be caused by the wrongful act, neglect or default of another in any foreign State or country for which a right to maintain an action and recover damages thereof is given by the statute or law of such foreign State or country, such right of action may be enforced in

---

1. All article references are to Vernon's Ann.Tex.Stats.

the courts of this State within the time prescribed for the commencement of such actions by the statutes of this State. The law of the forum shall control in the prosecution and maintenance of such action in the courts of this State in all matters pertaining to the procedure."

The provisions of Article 4678 became a part of the law of Texas long after the original wrongful death statute was adopted. See Acts 1913, 33rd Leg. ch. 161, p. 338, and Acts 1917, 35th Leg. ch. 156, p. 365. This enactment does not purport to give extraterritorial effect to the Texas wrongful death statute. Its purpose was simply to provide that a right of action arising under the laws of a foreign state or country for the wrongful death of a Texas citizen could be enforced in the Texas courts. The words, "whenever the death ' * * * of a citizen of this State * * * for which a right to maintain an action * * * is given by the statute or law of such foreign state * * * *such right of action* may be enforced in the courts of this State * * *" are abundantly clear as to the legislative intention.[2]

As pointed out in the opinion of the Court of Civil Appeals, the courts of this state have repeatedly held that Article 4671 has no extraterritorial application. We need not discuss the Texas cases so holding except as necessary to review one contention which is strongly urged by the petitioner. While some of the cases heretofore decided simply declare that our wrongful death statute has no extraterritorial effect,[3] the early case of Willis v. Missouri Pacific

Ry. Co., 61 Tex. 432 (1884), stated a reason or rationale for its holding, viz.:

"But where the right of action does not exist except by reason of statute, it can be enforced only in the state where the statute is in existence and where the injury has occurred, that is to say, the cause of action must have arisen and the remedy must be pursued in the same state, and that must be the state where the law was enacted and has effect.

"The principle upon which the doctrine rests is the want of power in a state to give laws an extraterritorial effect."

It is pointed out that in Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 587, 7 L.Ed.2d 492, decided in 1962, the Supreme Court of the United States said:

"Where more than one State has sufficiently substantial contact with the activity in question, the forum State, by analysis of the interest possessed by the States involved, could constitutionally apply to the decision of the case the law of one or another state having such an interest in the multistate activity."

It is argued that the rationale stated in *Willis* is no longer operative and under the view taken by the Supreme Court of the United States, as well as other authorities, it cannot now be legitimately maintained that a state cannot adopt a statute having an extraterritorial effect. If this proposition be accepted as sound, it does not necessarily follow that we should now hold that Article 4671 has an extra-

---

2. The emergency clause to the 1917 Act recites that:

"The fact that there is now no law permitting citizens of this State, or of a foreign state or country, who may be killed or injured in a foreign state or country, for bringing an action for such injury or death under the laws of this State and in the courts of this State, creates an emergency," etc.

3. "The law of the place where the cause of action arose, the lex loci delictus, must determine the nature of the cause of ac-

tion, and the defenses, if any, available. The case asserted must stand or fall upon that law. 12 C.J. pp. 452–454; El Paso & N.W. Ry. Co. v. McComus, 36 Tex.Civ.App. 170, 81 S.W. 760, 761 (writ refused); Thomas v. Western Union Tel. Co., 25 Tex.Civ.App. 398, 61 S.W. 501, 502 (writ refused); [Mexican Nat.] Ry. Co. v. Jackson, 89 Tex. 107, 113, 33 S.W. 857, 31 L.R.A. 276, 59 Am.St.Rep. 28." Jones v. Louisiana Western Ry. Co., 243 S.W. 976 (Tex.Com. of Appeals 1922).

territorial thrust. It would be far reaching, to say the least, for us to say that an enactment of the Legislature adopted over a hundred years ago now has a different meaning and a more far reaching thrust than it did when construed by this court in 1884. We are not here dealing with the common law which is our special domain but with a cause of action which did not exist at common law but is wholly a creature of statute. And in the area of statutory construction, the doctrine of stare decisis has its greatest force. Moss v. Gibbs, 370 S.W.2d 452 (Tex.Sup.1963). A statute is *the creation of the Legislature and should* an interpretation of a statute by the courts be unacceptable to the Legislature, a simple remedy is available by the process of legislative amendment. United States v. South Buffalo Ry., 333 U.S. 771, 68 S.Ct. 868, 92 L.Ed. 1077 (1947).

■ As heretofore stated, an action for wrongful death did not exist at common law.[4] In 1846, the British Parliament passed Lord Campbell's Act (9 & 10 Vict. Ch. 93), providing for the recovery of damages in case of wrongful death. Practically all the American jurisdictions adopted similar acts with varying provisions. Many of these acts, including that adopted in Colorado, placed a limit upon the amount of recovery. The first wrongful death statute was adopted in Texas in 1860 (Acts 1860, 8th Leg. ch. 35, p. 32, 4 Gammel's Laws of Texas 1394).

The cause of action is provided for in Article 4671. There is nothing contained in the wording of this article nor the wording of any of the other articles contained in Title 77, "Injuries Resulting in Death," which can be construed as *expressly* giving extraterritorial effect to the Texas wrongful death statute. The most that can be said is that the statute is silent as to the matter and hence the legis-

lative intent thereto is not known. Admittedly, there are two questions involved, namely, the *extent* of the legislative power, and the *intention* of the legislative authority. This is made clear in Foley Bros. v. Filardo, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680 (1949), wherein the question raised was whether the Fair Labor Standards Act had application beyond the territorial juridiction of the United States. The Supreme Court of the United States said:

"The question before us is not the power of Congress to extend the Eight Hour Law to work performed in foreign countries. Petitioner concedes that such power exists. Cf. Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375; United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149. The question is rather whether Congress intended to make the law applicable to such work. We conclude, for the reasons expressed below, that such was not the intention of the legislators.

"*First.* The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States, Blackmer v. United States, supra, 284 U.S. at 437, 52 S.Ct. [252] at page 254, 76 L.Ed. [382], 375, is a valid approach whereby unexpressed congressional intent may be ascertained. It is based on the assumption that Congress is primarily concerned with domestic conditions. We find nothing in the Act itself, as amended, nor in the legislative history, which would lead to the belief that Congress entertained any intention other than the normal one in this case. * * *

"There is no language in the Eight Hour Law, here in question, that gives

---

4. "In a civil Court, the death of a human being could not be complained of as an injury; and in this case the damages, as to the plaintiff's wife, must stop with the period of her existence." Lord Ellenborough in Baker v. Bolton, 1 Campbell 493, 170 Eng.Reprint 1033 (1808).

any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control. * * *"

The rule stated is one of general application. As stated in American Jurisprudence:

"Implied Territorial Limitations.— Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it, and it is generally so construed. An extraterritorial effect is not to be given statutes by implication. * * *" (50 Am.Jur. 510, Statutes § 487).

■ Not only does our wrongful death statute contain no wording indicating that the Legislature intended that the Act should have extraterritorial force, but, as pointed out in the opinion of the Court of Civil Appeals, it has been repeatedly held by the Texas courts that it does not. In addition to these considerations, the provisions of Article 4671, which give rise to the action, have been on our statute books in one form or another since 1860. They have been carried forward without substantial change in wording in the Texas Revised Statutes of 1879, 1895, 1911 and 1925. While the rule is not invariable, it is well settled, as a general proposition, that:

"[T]he Legislature must be regarded as intending statutes, when repeatedly re-enacted, as is the case here, to be given that interpretation which has been settled by the courts. Love v. Wilcox [119 Tex. 256] 28 S.W.(2d) 515, 524 (11) [70 A.L.R. 1484]; Pearson v. West, 97 Tex. [238] 239, 77 S.W. 944." Cunningham v. Cunningham, 120 Tex. 491, 40 S.W.2d 46, 75 A.L.R. 1305 (1931).

The anatomy of petitioner's counter-argument that stare decisis does not here apply is this: (1) The holding of the Supreme Court of Texas that a statute such as the wrongful death act had no extraterritorial effect was based upon the premise that the Legislature lacked constitutional power to give such effect to the act. (2) Under modern concepts and approaches, particularly since Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 587, 7 L.Ed.2d 492 (1962), the constitutional inhibition against extraterritoriality is no longer valid. (3) Therefore, this court should attribute to the Legislature an intention to enact a statute having extraterritorial force. We must reject this argument. An intention that the statute should have extraterritorial effect cannot be gathered from the wording of the statute, hence we do not have and will not have a "choice of laws" situation unless and until the Legislature gives extraterritorial force to the statute.

The circumstance that we may believe that a case such as this should be controlled by Texas law or that the Legislature, after the development of the "significant contacts rule," should have amended the statute so as to give it an extraterritorial effect, does not authorize us to enter the legislative field. We have not yet adopted the theory that the Legislature's non-action authorizes judicial action in legislative matters.

The judgments of the District Court and the Court of Civil Appeals are affirmed.

Dissenting opinion by STEAKLEY, J., joined by SMITH and GREENHILL, JJ.

## DISSENTING OPINION

STEAKLEY, Justice.

I respectfully dissent. The problem is judicial in origin—not legislative—and the separation of powers provision of the Constitution should not be held to mean that only the Legislature can solve it. I therefore disagree with the conclusion of the majority that until and unless the Legislature inserts a sentence in our wrongful death statutes expressly reciting that they shall have extraterritorial effect, we may not reconsider and overrule the discredited holding in Willis v. Missouri Pacific Ry. Co., 61 Tex. 432 (1884), that a state is without power to give its laws extraterritorial force; or consider and adopt the judicial "significant contacts rule" and by so doing enforce the declared public policy of our State for the benefit of its citizens seeking redress for wrongful death.

Nor is there any assurance in the majority holding that any of this will be later accomplished should the Legislature accept the invitation to add the extraterritorial sentence. We have been under the judicial edict of this Court since 1884 that a state lacks the power to give its laws extraterritorial effect either by express legislative declaration or by judicial decision. So it is not surprising that the legislature has not attempted to so declare during these intervening eighty-four years since Willis. And even today the majority backs away from overruling this relic of the past.

This Court in Willis, and in cases following in its wake, gave no thought to the extraterritorial implications of Articles 4671 et seq., quoted in the majority opinion. This consideration could not even come to the surface because of the view then held that in no event could the statutes have extraterritorial thrust. Willis upheld a demurrer to the suit of a wife against the railway company to recover damages for the negligent killing of her brakeman husband. The injury and death occurred in the Indian Territory. The plaintiff and the deceased were residents of Texas and the railroad operated under a charter granted by the Legislature of Texas. The court said:

"But where the right of action does not exist except by reason of statute, it can be enforced only in the state where the statute is in existence and where the injury has occurred. That is to say, the cause of action must have arisen and the remedy must be pursued in the same state, and that must be the state where the law was enacted and has effect.

"The principle upon which the doctrine rests is the want of power in a state to give her laws an extraterritorial effect."

One later illustration of the influence of Willis will suffice. De Ham v. Mexican Nat. Ry. Co., 86 Tex. 68, 23 S.W. 381 (1893), also upheld a demurrer to the suit of a mother for damages for injuries to her son inflicted in the Republic of Mexico causing subsequent death in Texas. The court said, citing Willis:

"It is settled law that the statute of a state which, for a tort, gives a right of action in derogation of the common law, or a right of action unknown to that law, can have no extraterritorial force; and, in accordance with this rule, it has been expressly decided in this state that for an injury inflicted in another state or territory, which results in the death of the party injured, the surviving relatives have no right to recover in this state. * * * As to torts, at least, the laws of a state have no operation beyond its own limits."

Willis and its progeny were wrongly decided and should be overruled. Their underpinnings fall away in the modern recognition of the constitutional interest of a state with substantial ties to an occurrence outside its territorial limits in the application of its own rules of law in determining the consequences of wrongful conduct. In Richards v. United States, 369 U.S. 1, 82

S.Ct. 585, 7 L.Ed.2d 492 (1962), the Court said:

"Our view of a State's power to adopt an appropriate conflict-of-laws doctrine in a situation touching more than one place has been indicated by our discussion in Part III of this opinion. Where more than one State has sufficiently substantial contact with the activity in question, the forum State, by analysis of the interests possessed by the States involved, could constitutionally apply to the decision of the case the law of one or another state having such an interest in the multistate activity. * * *"

See also Pearson v. Northeast Airlines, Inc., 309 F.2d 553, 92 A.L.R.2d 1162 (2d Cir. 1962): "We do hold, however, that a state with substantial ties to a transaction in dispute has a legitimate constitutional interest in the application of its own rules of law. * * *"

We have recently applied Texas law to determine the consequences to a Texas citizen of conduct occurring outside the State. See Texas Employers' Insurance Ass'n v. Dossey, 402 S.W.2d 153 (Tex.Sup. 1966). In King v. Bruce, 145 Tex. 647, 201 S.W.2d 803, 171 A.L.R. 1328 (1947), we quoted with approval the exception to the general rule of control by law of the state where a contract was made:

"That rule has, however, its exceptions. It will not be observed and applied when to enforce a foreign contract, according to the provisions of the foreign laws, will contravene some established rule of public policy of the state of the forum. Union Trust Co. v. Grosman, 245 U.S. 412, 38 S.Ct. 147, 62 L.Ed. 368; 1 Wharton on Conflict of Laws (3d Ed.), 275."

Lex loci delictus, the law of the place of the wrong, has also dominated past decisions of our courts. This is seen in the judicial treatment of the predecessor statute to present Article 4678. Illustrative is Jones v. Louisiana Western Ry. Co., 243 S.W. 976 (Tex.Com.App.1922, jdgmt adopted):

"Our statute provides that whenever the death of a citizen in another state has been caused by the wrongful act, neglect, or default of another in such state, for which death a right to maintain an action to recover damages is given by the law thereof, such right may be enforced in the courts of this state. Complete Texas Statutes 1920, art. 7730½. It is the cause of action given by the law of the state in which negligent killing occurred that our courts are authorized to enforce. The law of the place where the cause of action arose, the lex loci delictus, must determine the nature of the cause of action, and the defenses, if any, available. The case asserted must stand or fall upon that law."

This is again seen in El Paso & Juarez Traction Co. v. Carruth, 255 S.W. 159 (Tex. Com.App.1923):

"This statute merely declared what had theretofore been the universal rule, that the lex loci delictus must determine the nature of the cause of action, and the extent of the recovery, while the forms of remedies and the mode of pursuing same are determined by the law of the forum."

The waning influence of lex loci delictus is seen in the growing and wide acceptance of the policy which holds that the law of the forum will determine the rights of the parties in those cases where the forum state has the most significant relationship with the occurrence.[1] The doctrine pro-

1. See Comments on Babcock v. Jackson, A Recent Development in Conflict of Laws, (by Professors Cavers, Cheatham, Currie, Ehrenzweig, Leflar, and Reese), 63 Colum.L.Rev. 1212 (1963); Currie, Selected Essays on the Conflict of Laws 629–742 (1963 ed.); Stumberg, Principles of Conflict of Laws 199–212 (3rd ed. 1963); Weintraub, A Method for Solving Conflict Problems—Torts, 48 Cornell L. Q. 215 (1963); Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L.Rev. 267 (1966).

vides a flexible method of solving the problem of conflicting domestic law by looking to the public policy of the respective states as reflected in its statutes. The trend for so doing, and away from construing statutes of the forum as having no extraterritorial effect, is impressive. Restatement (Second) of Conflict of Laws § 145 (Proposed Official Draft, Part II, May 1, 1968) expresses the principle as follows:

"The General Principle.

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Perhaps the landmark case in the trend away from rigid application of the *lex loci* is Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963). There a New York resident was injured in an automobile accident while traveling with other New Yorkers in Ontario, Canada. The plaintiff sued the host-driver, who pleaded the Ontario Guest Statute as a complete bar to recovery. New York has no guest statute. The New York court adopted what it termed the "center of gravity" or "grouping of contacts" approach in holding that it would not apply the Ontario statute as a bar to recovery. The basis for the holding is that New York had sufficient contacts with the cause of action to justify the application of New York law, and that a substantial interest of the State of New York would be forwarded by doing so, while Ontario had no interest sufficient to justify the application of its law by the New York court. While Ontario would have an interest in applying its law to regulate standards of conduct, such as rules of the Ontario highways, it had no interest in regulating the rights and liabilities of New Yorkers arising from a guest-host relationship which had its origin in New York. The court stated:

"Comparison of the relative 'contacts' and 'interests' of New York and Ontario in this litigation, vis-a-vis the issue here presented, makes it clear that the concern of New York is unquestionably the greater and more direct and that the interest of Ontario is at best minimal. The present action involves injuries sustained by a New York guest as the result of the negligence of a New York host in the operation of an automobile, garaged, licensed and undoubtedly insured in New York, in the course of a week-end journey which began and was to end there. In sharp contrast, Ontario's sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there.

\* \* \* \* \* \*

"The issue here, however, is not whether the defendant offended against a rule of the road prescribed by Ontario for motorists generally or whether he violated some standard of conduct imposed by that jurisdiction, but rather whether the plaintiff, because she was a guest in the defendant's automobile, is barred from recovering damages for a wrong concededly committed. As to that issue, it is New York, the place where the parties resided, where their guest-host relationship arose and where the trip began

and was to end, rather than Ontario, the place of the fortuitous occurrence of the accident, which has the dominant contacts and the superior claim for application of its law. * * *"

The Supreme Court of Pennsylvania, in Kuchinic v. McCrory, 422 Pa. 620, 222 A.2d 897 (1966), held Pennsylvania, not Georgia, law applicable in the case of an airplane crash in Georgia in route from Florida to Pennsylvania and involving only Pennsylvania passengers. The court reasoned:

"We agree with appellants that the policy and interest analysis spelled out in Griffith v. United Airlines [Inc.], 416 Pa. 1, 203 A.2d 796 (1964) requires that Pennsylvania law be applied to · these facts. * * *

"Indeed when properly analyzed the present cases are a prime example of what has been characterized as a 'false conflict', for under no stretch of the imagination can Georgia be viewed as a concerned jurisdiction. * * * Georgia's only contact with the present case, as the situs of the accident, is wholly fortuitous, whereas Pennsylvania, as the place where the host-guest relationship was established, where it was intended to terminate, and as the domicile of all four of the aircraft's occupants, is the state with the most significant interest in defining the legal consequences attached to the relationship here involved."

Clark v. Clark, 107 N.H. 351, 222 A.2d 205, 206 (1966), considered the circumstances of an automobile accident in Vermont involving New Hampshire citizens. The Supreme Court of New Hampshire held that its law would determine the rights and liabilities of the parties, and in speaking of the lex loci delictus rule said:

"That old rule is today almost completely discredited as an unvarying guide to choice of law decision in all tort cases due in no small part to the trenchant criticism of Cheatham, Cook, Currie, Lorenzen, Stumberg and Yntema. No conflict of laws authority in America today agrees that the old rule should be retained. * * * No American court which has felt free to re-examine the matter thoroughly in the last decade has chosen to retain the old rule. * * *

"Vermont's interests under its statute are in suits brought in its own courts affecting hosts, guests and insurance companies subject to its jurisdiction. Our primary interest arising out of our ordinary negligence law correspondingly applies to suits in our courts affecting people and relationships with which we have a legitimate concern. That interest in this case is a real one."

Cases in accord in other jurisdictions are cited in the footnote.[2]

I am in agreement with these decisions and would hold that the wrongful death statutes of our State may be constitutionally applied to occurrences beyond its territorial limits and that the rule of lex loci delictus will no longer bar application of the law of the forum. See in accord Restatement (Second) of Conflict of Laws § 175 (Proposed Official Draft, Part II, May 1, 1968), which reads as follows:

"Right of Action for Death.

"In an action for wrongful death, the local law of the state where the injury

2. Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965); Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526 (1966); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Wessling v. Paris, 417 S.W.2d 259 (Ky.Ct. App.1967); Casey v. Manson Construction and Engineering Co., 428 P.2d 898 (Or.Sup.Ct.1967); Reich v. Purcell, 63 Cal.Rptr. 31, 432 P.2d 727 (Cal.Sup.Ct. 1967); Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense, 121 U.S. App.D.C. 338, 350 F.2d 468 (1965); Watts v. Pioneer Corn Company, 342 F.2d 617 (7th Cir. 1965); Gianni v. Fort Wayne Air Service, Inc., 342 F.2d 621 (7th Cir. 1965). See also Seguros Tepeyac, S.A., Compania Mexicana, etc. v. Bostrom, 347 F.2d 168, 175 (5th Cir. 1965).

occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied."

Turning to the case at hand, it would be difficult to pose circumstances arguing more forcefully for the rule of "most significant contacts" and against adherence to the view that the law of the place of injury is determinative of the consequences of tortious conduct. Here the only matter of concern to the State of Colorado is the conduct of the pilot during that portion of the interstate journey when the aircraft was flying in Colorado air and using Colorado airport facilities. The negligence of the pilot in causing the fortuitous crash in Colorado, and hence the accountability of those in Texas who must answer for his acts, was stipulated. Beyond this, Colorado can have no further legitimate interest. The wrongful act of the pilot did not cause the death of a Colorado constituent nor will citizens of Colorado be answerable in damages. There is no justification in logic or reason for Colorado law to nevertheless govern the substantive rights of the parties. It is a matter of indifference to that state, and in no way contrary to its public policy, that the law of Texas should determine the consequences of the conduct of the pilot. Texas is the only state of significant connection with the Texas citizens who were killed and with those who are liable therefor; its interest is maximal while that of Colorado is minimal. There is no conflict. This being so, there should be no difficulty in concluding that the Texas citizens are entitled to the benefits of the public policy reflected in the statutes of Texas as the forum state.

It is clear, furthermore, that the cause of action authorized by Article 4671 is not limited by its terms to a wrongful death occurring within the territorial limits of the State. The statute speaks only of an injury causing death by wrongful act. A territorial limitation must be engrafted by implication and there is no logic in a supposition that the legislature would want or intend to preclude its citizens from recovering full damages for wrongful death because the causative injuries happened outside our territorial limits. Nor is it to be expected that the Texas Legislature during the years, and on the occasions of the re-enactments of Article 4671, would have undertaken to expressly provide for extraterritorial reach when this Court had repeatedly said in the past that it did not have the constitutional power so to do. Nonaction under such circumstances is not legislative acquiescence and has no bearing on the judicial responsibility of deciding the thrust of the statutes, a matter to which this Court has not heretofore addressed itself, and, in my view, does not do so today.

Finally, Article 4678 does not require our courts to enforce the foreign right of action in the extraterritorial situation. The language of the statute is permissive and not mandatory. It does no more than authorize enforcement of the foreign right of action in the courts of this State if the survivors elect to seek such relief. The statutory right of action under the law of the forum otherwise available under Article 4671 is not precluded by the subsequent enactment of Article 4678. The latter statute does not purport to prescribe the conditions under which Article 4671 is applicable. It is not a mandate to our courts to enforce the substantive law of the birthplace of the cause of action when not invoked by the parties seeking compensatory damages. The underlying purpose of Article 4671 is the establishment of a statutory right of action for wrongful death. It does not purport to speak in terms of assertion of the statutory right under local law or under foreign law and does not, standing alone, authorize enforcement in our courts of a foreign right of action. Article 4678 does so with two conditions. There must be a statutory right of action given by the statutes of the foreign jurisdiction, and the trial of such action is to be governed by the procedural law of our State. The inter-

locking relationship of the two statutes is obvious and plausible.

I would reverse the judgments below and give the Texas survivors their statutory rights under the law of Texas, the forum state.

SMITH and GREENHILL, JJ., join in this dissent.

## ON MOTION FOR REHEARING

NORVELL, Justice.

■ The dissenting opinion filed herein recognizes at the outset that Willis v. Missouri Pacific Ry., 61 Tex. 432, and the line of cases following that decision have construed the Texas wrongful death statute as having no extraterritorial effect, and that this line of authorities must be overruled before we adopt a choice of law rule under which we could apply the Texas law rather than the Colorado law in measuring the damages to be awarded in this case.[1]

Under the law as it now exists, there is no choice of laws. Article 4671 does not apply to wrongful acts resulting in death which are committed outside of Texas, consequently the only basis for this purely statutory action is the Colorado statute which is enforceable in Texas by virtue of Article 4678.[2]

■ It is one thing for the judicial branch to amend a statute and quite another thing to modify a rule of common law. And, to overrule a court's uniform interpretation of a statute which has persisted over a long period of years as evidenced by numerous decisions, is very like amending a statute. That is why the rule of stare decisis is highly binding in this field. A series of holdings by a court of last resort should operate as an axiom or new starting point, so to speak, and if a reexamination of all decisions is to be made upon all occasions, the rule would serve no purpose and there would be no certainty in the law.[3]

[1]. In Texas & Pacific Ry. v. Cox, 145 U.S. 593, 12 S.Ct. 905, 36 L.Ed. 829 (1892), the Supreme Court of the United States stated that the holding of Willis v. Missouri Pacific Ry. was that "suit could not be brought in that state (Texas) for injuries resulting in death inflicted, * * * where no law existed creating such a right of action." This is clearly a recognition that under the Texas court's holding, the Texas wrongful death statute had no extraterritorial effect. This construction of the statute was apparently unchallenged until the present suit was filed.

The bindingness of a series of holdings of a court of last resort under the rule of stare decisis is determined by the "decision" rather than the opinion or rationale advanced for the decision. 21 C.J.S. Courts §§ 181, 186, pp. 289, 297. The controlling principle of a case is generally determined by the judgment rendered therein in the light of the facts which the deciding authority deems important. Goodhart, "Determining the Ratio Decidendi of a Case," Jurisprudence in Action, p. 191. The similarity of the facts in this case to those of Willis v. Missouri Pacific Ry. is readily apparent.

[2]. "At common law, no person had a legally cognizable interest in the wrongful death of another person, and no person could inherit the personal right of another to recover for tortious injuries to his body. * * * One important reason why recovery for wrongful death had everywhere to await statutory delineation is that the interest one person has in the life of another is inherently intractable. Rather than hear offers of proof of love and affection and economic dependence from every person who might think or claim that the bell had tolled for him, the courts stayed their hands pending legislative action. * * *" Harlan, J. dissenting in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L. Ed.2d 436 (1968).

[3]. When a court overrules one of its former decisions, it necessarily makes a policy decision. Because of the cumbersomeness of the amending process, the rule sometimes does not have the force in constitutional matters that it possesses in the legislative field where a construction of a statute, if unpalatable to the Congress or a State Legislature, may be changed with comparative ease. 20 Am.Jur. 502, Courts, §§ 197, 198.

Other fields in which stare decisis applies with particular force are decisions involving land titles (Cross v. Wilkinson, 111 Tex. 311, 234 S.W. 68, 1921, involv-

We make the above observations in order to clearly point out that the basis of this court's holding is its decision to abide by the rule of stare decisis and refuse to overrule Willis v. Missouri Pacific Ry. and the line of cases following that decision.

 This is not the same kind of a case as Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796 (1964), wherein a true choice of law issue was presented and the stare decisis problem involved common law precedents. The doctrine of lex loci delicti is a court-made rule. Hopkins v. Lockheed Aircraft Corporation, 201 So.2d 743 (Fla.1967), and the abandonment of this rule in favor of some different one, such as a "significant contacts" rule, while it may involve the overruling of common law precedents on policy grounds, does not necessarily involve saying that a statute had one meaning fifty years ago and a different one today. In this latter situation, restraint rather than temerity may be the more becoming judicial virtue.

Many of the authorities cited by petitioners are either not apposite to the present case or adopt an entirely different approach to the problem. If the cases cited overrule prior constructions of statutes, they do not say so. At least, this seems to be true of the better considered cases, e. g., Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796 (1964), and Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963).[4]

We should perhaps say that we cannot accept the thesis set forth in Kilberg v. Northeast Airlines, 9 N.Y.2d 34, 211 N.Y.S. 2d 133, 172 N.E.2d 526 (1961), i. e. that while the statutory law of Massachusetts, where the wrongful act which resulted in the death of a New York resident took

place, gave rise to and controlled the substantive law applicable to the action, the limitation on the recovery that could be allowed therein was procedural in nature and hence controlled by the law of New York. See also for comparison, Hopkins v. Lockheed Aircraft Corporation, 201 So.2d 743 (Fla.1967).

Petitioners' motion for rehearing is overruled.

---

ing issues of both statutory construction and land titles), forms of contracts in general use, insurance policies, common law rules of long standing, upon which parties have probably relied in conducting their personal, family, and business affairs. See also, Chief Justice Bell's discussion of "Stare Decisis—What, Why, Whither?",

contained in his dissenting opinion in Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796, l. c. 810 (1964).

4. In connection with the Babcock case, see, Comments by Cavers, Cheatham, Currie. Ehrenzweig, Leflar and Reese, 63 Colum. L.Rev. 1212 (1963).