# Supreme Court of Texas

No. 23-0045

Michael A. Pohl, et al.,

*Petitioners,*

v.

Mark Kentrell Cheatham, Sr., et al.,

*Respondents*

On Petition for Review from the
Court of Appeals for the First District of Texas

JUSTICE BUSBY, joined by Justice Lehrmann and Justice Boyd, dissenting.

Clients who hired Texas attorneys to represent them in other states have sued those attorneys in Texas, seeking to void their fee agreements because the attorneys—while located in their Texas offices—allegedly contracted with and paid case runners to solicit the clients' business in those states. The attorneys' alleged conduct, if proven, is a criminal offense that can be prosecuted in Texas. Section 38.12 of the Penal Code makes it a third-degree felony for a Texas attorney to "offer[] to pay or give a person money or anything of value to solicit employment" with "intent to obtain an economic benefit,"

or to "knowingly finance[] the commission of [such] an offense." TEX. PENAL CODE § 38.12(a)(4), (b)(1). And Section 1.04 gives Texas jurisdiction to prosecute when "conduct . . . that is an element of the offense"—here, the alleged financing and offers to pay—"occurs inside this state." *Id.* § 1.04(a)(1). Independently, such professional misconduct can result in disbarment.[1]

Yet today, the Court holds that Texas law has nothing to say about whether these Texas attorneys can still profit from their allegedly criminal and unprofessional conduct—even though the Legislature unanimously passed a civil barratry statute in 2011 creating "an action to void a contract for legal services that was procured as a result of conduct violating [Penal Code] Section 38.12(a) or (b)." TEX. GOV'T CODE § 82.0651(a). Why? The attorneys' alleged victims were located in other states, the Court reasons, so the solicitors completed their work there. And because the sole "focus" of the statute is on the "acts of solicitation" themselves, applying it to the conduct here would violate the presumption against applying Texas laws extraterritorially. *Ante* at 23.

In reaching this conclusion, the Court rewrites the statute. The Legislature has expressly told us to focus on "conduct violating" Section 38.12(a) or (b), and the many distinct parts of those subsections demonstrate the Legislature's intent to regulate a wide variety of conduct. Here, the alleged violating conduct—the financing and offers to pay the solicitors—occurred in Texas, not in other states.

---

[1] *See* TEX. GOV'T CODE § 82.062; TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03, 8.04(a)(9), 8.05(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A; *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994).

Accordingly, this suit is a permissible domestic application of the statute. Because I can find no basis for the Court's decision in the text of the statutes just quoted, I respectfully dissent.

\* \* \*

At first glance, there is a tidy appeal to the two-step analytical framework the Court borrows from U.S. Supreme Court cases addressing whether a federal statute applies abroad. A legislative body is presumed to act with domestic applications in mind, so we first consider whether it has expressed a clear intent that its laws apply to conduct in the territory of other sovereigns. *Ante* at 17-18; *Abitron Austr. GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417-18 (2023). The Court concludes that the Legislature expressed no such intent here.[2]

If the law is not extraterritorial, then the second step is to "identify the *focus* of the [legislative] concern underlying the provision at issue" and "ask whether the *conduct relevant to that focus* occurred within [domestic territory]." *Ante* at 21 (emphases added); *see also*

---

[2] *Ante* at 18-21. Because I conclude at step two that no extraterritorial application of Section 82.0651(a) is involved here, it is unnecessary for me to reach the step-one question whether that statute applies extraterritorially. *See Abitron*, 600 U.S. at 418 n.2 ("[C]ourts may take these steps in any order."). But I note that a thorough case for extraterritoriality was recently made by a federal district court addressing a different Texas statute that incorporates the Penal Code. *See A.S. v. Salesforce, Inc.*, 747 F. Supp. 3d 970, 977-981 (N.D. Tex. 2024). And the Supreme Court has interpreted a civil statute incorporating federal criminal laws to have partial extraterritorial reach based on the text of the latter laws. *See RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 338 (2016). The Court claims that I "tellingly ignore" authorities it says point the other way in this particular context. *Ante* at 19 n.9. I assure the Court that I have read its opinion and considered those authorities. But again, I find it unnecessary to reach a decision regarding step one given my conclusion at step two.

*Abitron*, 600 U.S. at 418. If so, the case "involves a permissible domestic application of the statute, even if other conduct occurred abroad." *Abitron*, 600 U.S. at 419 (cleaned up). I part ways with the Court on the application of this focus test.

A statute's focuses "are the objects of [its] solicitude," *Morrison v. Nat'l Austr. Bank Ltd.*, 561 U.S. 247, 267 (2010), which "can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate," *Abitron*, 600 U.S. at 418 (cleaned up). In other words, a statute may have more than one focus, and different parts of a statute may have different focuses. "When determining the focus of a statute," if it "works in tandem with other provisions, it must be assessed *in concert* with those other provisions." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 414 (2018) (emphasis added). Thus, in *RJR Nabisco, Inc. v. European Community*, the Supreme Court looked to various criminal-law predicate offenses incorporated into the civil RICO statute to determine whether that statute reached at least some foreign conduct. 579 U.S. 325, 338 (2016).

This "focus of legislative concern" test has been criticized as indeterminate, difficult to apply consistently (as shown by the splits of authority it has produced), and subject to manipulation by courts that choose their own preferred focus over other alternatives without tying that choice to the statutory language.[3] Interestingly, these are similar to the criticisms the Supreme Court leveled at the location-of-conduct

---

[3] *See, e.g.*, Franklin A. Gevurtz, *Extraterritorial Application of Statutes and Regulations*, 70 AM. J. COMP. L. i347, i365-i371 (2022); Aaron D. Simowitz, *The Extraterritoriality Formalisms*, 51 CONN. L. REV. 375, 388-404 (2019).

test and effects test, which preceded the focus test. *See Morrison*, 561 U.S. at 258-261.

There need be no such confusion regarding this statute, however, because the Legislature expressly states its focus in the text. The statute specifies that its purpose is "to protect those in need of legal services from unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." TEX. GOV'T CODE § 82.0651(e). So what unethical, unlawful solicitation is the focus of the procedures it provides? The statute tells us earlier in the same section, where it creates a cause of action to void a contract "that was procured as a result of *conduct violating* [Penal Code] Section 38.12(a) or (b)." *Id.* § 82.0651(a) (emphasis added). Here, the procuring "conduct relevant to that focus"[4] is that the attorneys (among other things) allegedly "offer[ed] to pay or give a person money or anything of value to solicit employment" in violation of Section 38.12(a)(4) and "knowingly finance[d] the commission of [such] an offense" in violation of Section 38.12(b)(1). This alleged conduct that the statute seeks to regulate occurred at the attorneys' Texas offices. Accordingly, the court of appeals correctly held that this case involves a permissible domestic application of Section 82.0651(a).

This Court reaches a contrary conclusion by treating Section 82.0651(a) as if its sole focus were "the in-person acts of solicitation" that "procured the legal-services contracts." *Ante* at 23; *see also id.* at 25 ("Section 82.0651's focus is on the solicitation of the legal-

---

[4] *Abitron*, 600 U.S. at 418 (quoting *WesternGeco*, 585 U.S. at 413).

5

services contract."). This interpretive move ignores the whole text of Penal Code Section 38.12(a) and (b), which must be read "in concert" with Section 82.0651(a) to determine that statute's focus. *WesternGeco*, 585 U.S. at 414; *see RJR Nabisco*, 579 U.S. at 338.

Specifically, the acts of solicitation that the Court cherry-picks as "the *core* conduct the Legislature sought to address"[5] are merely the focus of Penal Code Section 38.12*(a)(2)*, which criminalizes "solicit[ing] employment." By incorporating *all* of Penal Code Section 38.12(a) and (b), Section 82.0651(a) "seeks to regulate"[6] a much wider range of different types of conduct, all of which the Legislature has told us it finds necessary to "protect those in need of legal services against unethical, unlawful solicitation." TEX. GOV'T CODE § 82.0651(e). That is the Legislature's call to make, not ours.[7] Here is the full text of subsections (a) and (b), which shows their breadth:

> (a) A person commits an offense if, with intent to obtain an economic benefit the person:
>
>> (1) knowingly institutes a suit or claim that the person has not been authorized to pursue;
>>
>> (2) solicits employment, either in person or by telephone, for himself or for another;
>>
>> (3) pays, gives, or advances or offers to pay, give, or advance to a prospective client money

---

[5] *Ante* at 22 (emphasis added).

[6] *Abitron*, 600 U.S. at 418 (cleaned up).

[7] *In re Dep't of Fam. & Protective Servs.*, 273 S.W.3d 637, 645 (Tex. 2009) ("[I]t is not for courts to decide if legislative enactments are wise or if particular provisions of statutes could be more effectively worded to reach what courts or litigants might believe to be better or more equitable results.").

or anything of value to obtain employment as a professional from the prospective client;

(4) pays or gives or offers to pay or give a person money or anything of value to solicit employment;

(5) pays or gives or offers to pay or give a family member of a prospective client money or anything of value to solicit employment; or

(6) accepts or agrees to accept money or anything of value to solicit employment.

(b) A person commits an offense if the person:

(1) knowingly finances the commission of an offense under Subsection (a);

(2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a); or

(3) is a professional who knowingly accepts employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of Subsection (a).

TEX. PENAL CODE § 38.12(a)-(b).

It is neither this Court's role nor a feasible task to read a collective legislative mind and select only one type of conduct from this statutory list, elevating it as "core"[8]—and therefore the sole touchstone of whether the statute is being applied domestically or extraterritorially—while discarding the other eight types of conduct the Legislature chose to regulate. "[W]hen we stray from the plain language of a statute, we risk

---

[8] *Ante* at 22.

7

encroaching on the Legislature's function to decide what the law should be." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).  Rather than making value judgments about a statute's core focus, we should stick to using traditional tools of statutory construction to determine that focus, as we have done for decades in deciding disputes about statutes' territorial scope.  *See, e.g.*, *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430, 442, 444-46 (Tex. 2007); *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 185 (Tex. 1968).

The Court attempts to avoid this problem by disregarding the clients' allegation that the attorneys violated Section 38.12(a)(4) when they offered in Texas to pay the solicitors.[9]  In the Court's view, the only "conduct violating Section 38.12(a) was the actual solicitation of the clients" under Section 38.12(a)(2), "which occurred outside Texas." *Ante* at 24.  An examination of the clients' live pleading shows this is simply incorrect, and there is no issue before us at this stage disputing that offers to pay in fact occurred in Texas.  I did not understand the clients to abandon these allegations at oral argument by also mentioning the alleged violation of Section 38.12(b)(1), as the Court appears to suggest. *See id.*[10]

Perhaps the result of today's decision will be that the Legislature amends the civil barratry statute to make even more explicit what the

---

[9] Plaintiffs' and Intervenor's Sixth Amended Petition at 3, 21, No. 2017-41110 (55th Dist. Ct., Harris County, Tex. Apr. 24, 2019).

[10] As the statutory language quoted above shows, a violation of subsection (b)(1) can be based on a violation of subsection (a)(4).  The clients have alleged that both violations occurred in Texas.

8

"core focus" of that statute is under the Court's new gloss on our extraterritoriality jurisprudence. Indeed, many of the U.S. Supreme Court's extraterritoriality decisions have been followed by congressional enactments expanding the statutes' scope.[11] This sort of dialogue between the legislative and judicial branches is often salutary and clarifying. *See In re Doe*, 19 S.W.3d 346, 354 (Tex. 2000). But here, where the focus of the statute is already apparent from its text, I regard it as wasteful. Because the Legislature spoke clearly and should not have to expend its limited time and resources to act again, I respectfully dissent.

J. Brett Busby
Justice

**OPINION FILED:** May 9, 2025

---

[11] *See* Simowitz, *supra* note 3, at 396.

9